No. 71.—JOHN DAVIS, plaintiff in error, *vs.* COLLIER & BEERS *et al.* defendants in error.

[1.] An interrogatory for which no foundation is laid in the allegations of the bill, constitutes no part of the bill which the defendant is called upon to answer, and presents no equity.

[2.] Where several *fi. fas.* and a distress warrant had been levied on various property of a defendant, consisting of cotton, corn, household and kitchen furniture, horses, hogs, and cattle, &c. by the Sheriff, and before the day of sale appointed by law, and before the same had been advertised according to law, the creditors came together and entered into an agreement in writing, together with the defendant, by which it was stipulated that the property should be sold by the Sheriff at public outcry, on a day within the time prescribed by law, and without the advertisement of the same, according to law, except as to the live stock, and that the Sheriff retain the proceeds until the termination of the litigation between the creditors; and the Sheriff by virtue of such agreement, proceeded to sell the said property at the plantation of the defendant, without any order of Court, advertising the same for ten days only: *Held,* that such sale was not, as a whole, in the eye of the law, a Sheriff's sale; and that officer in making it, was not the ministerial officer of the Court, but the agent or trustee of the parties; that the Court had no right to treat the fund so raised, and in the hands of the Sheriff, as proceeds of the defendant's property, raised by Sheriff's sale, except that portion of it which was the avails of the horses, hogs and cattle; and that the whole, by the order of Court, on the usual money rule, could not be distributed among the judgment creditors of the defendant: *Held,* also, that where the Sheriff's return does not separate the fund raised by the sale of the live stock from the proceeds of the other property, and though the law allows this species of property to be sold at the residence of defendant upon ten days advertisement, and the sale by the Sheriff as to this live stock was in due form of law, yet no order of distribution could be granted as to it, until the two funds were sep-

arated by an amended return, if this could be made by the Sheriff: *Held* also, that under the term horses, mules should be included, and sheep under that of cattle.

[3.] Where a party. by deed of lease, demised a plantation, negroes, stock, &c. to another, for a term of years, and covenanted for a certain yearly rent, to be secured by lien on the annual crops to be made by the lessee, and after one or more of the annual sums of rent became due sued out his distress warrant against the lessee for the recovery thereof, and had the same levied on the property of the lessee, consisting of the crop, stock, &c. on such lease hold estate, at the same time that other *fi. fas.* in the names of other judgment creditors of such lessee were levied on said property, and afterwards brings his bill in Equity, and sets up his equitable lien on said fund and dismisses the levy of the distress warrant: *Held*, that he is not estopped by the suing out, or the levy of said distress warrant, from thus setting up and urging his equitable lien.

In Equity, in Baker Superior Court.    Tried before Judge PERKINS.    April Term, 1853.

On the 31st day of December, 1850, John Davis, a citizen of North Carolina, demised and leased to William P. Kitchand, of Baker County, a plantation, together with thirteen negroes, certain live stock, farming utensils, &c. for the term of three years, Kitchand stipulating to pay him rent therefor, as follows: for the year 1851, two thousand dollars ; and for each of the years, 1852 and 1853, twenty-five hundred dollars ; and to return to him at the expiration of the lease, the same quantity of live stock, &c. which he received at the time of the lease.

The proceeds of the crop of each year were pledged for the payment of the rent.

The rent for the year 1851, was not paid, but the proceeds of the crop were vested by Kitchand, without the knowledge and consent of Davis, in other property, as charged in the bill which was filed by Davis.

During the year 1852, judgments were obtained by defendants in error and others, against Kitchand, in Baker County.

On the 28th December, 1852, when Davis was about to file a bill to assert and enforce his equitable lien upon the crop of that year, live stock, &c. and when certain judgment creditors

had directed a levy to be made upon the crop and other property, and when the property had been levied upon by a distress warrant, in favor of Davis for his rent, the creditors of Kitchand came together with him, and entered into the following agreement :

" GEORGIA, BAKER COUNTY :

" The undersigned, creditors of William P. Kitchand, hereby agree that the property levied upon under sundry *fi. fas.* in favor of Collier & Beers, and Hunt, Pynchon & Rawson, and also under a distress warrant for rent, in favor of John Davis, and upon which John Davis claims a lien for rent for the year 1852, said property consisting of 34 bales of cotton, 1000 bushels of corn, 13 stacks of fodder, 6 mules, 1 horse, 100 head of ———, and other property mentioned in said levy, excepting such property as is exempt from levy and sale under the laws of this State, be by George W. Collier, the Sheriff of said County, sold at public outcry, on Wednesday, the 12th day of January next, at the plantation of said John Davis, known as the Parker place, in said County, and that the Sheriff retain in his hands the proceeds of such sale, until the litigation between the above creditors shall terminate. The above property, we agree, shall remain on the above plantation until the sale.

HUNT, PYNCHON & RAWSON,
COLLIER & BEERS,
JOHN DAVIS,
WARREN & WARREN,
        *Attorneys for Wm. P. Kitchand.*

December 29th, 1852.

The sale took place in pursuance of the agreement; ten days notice having been given by the Sheriff.

According to the return of the Sheriff, the crop brought $1786.10, and the mules, carts, wagons, cattle, sheep, household and kitchen furniture, $1427.00. Previous to the sale,

John Davis, by his attorney, dismissed the distress warrant, which had been levied upon the property.

At April Term, 1853, a judgment creditor of Kitchand, viz: the firm of R. H. Sims & Co., who was not a party to the agreement, moved the Court for a rule against the Sheriff, to show cause why he should not satisfy the *fi. fa.* held by them, out of the proceeds of the sale of the property ; whereupon the other judgment creditors, parties to the agreement, moved rules against the Sheriff. Counsel for John Davis then notified the Court and parties moving the rules against the Sheriff, of the equitable lien of Davis upon the crop and other property, which had been sold, and that he, Davis, had filed his bill for the purpose of enforcing that lien. The bill was taken up and the claim therein set forth, as predicated upon deed of lease to Kitchand by Davis, considered by the Court.

To this claim, the judgment creditors of Kitchand objected, as to the money arising from the sale of the live stock, farming utensils, &c. was concerned, alleging that the bill filed by Davis did not cover and enjoin that fund; which objection was sustained by the Court, and an order passed, directing the Sheriff to pay over the said fund to said judgment creditors.

To this decision, counsel for complainant excepted, and upon this exception assigned error as follows :

1st. That the Court erred in deciding that the whole fund in the hands of Collier, the Sheriff, was not put in litigation by the bill, nor covered by the injunction thereon.

2d. That the Court erred in deciding that only the amount arising from the sale of the crop of 1852, was enjoined by complainant's bill.

3d. That the Court erred in granting the orders in favor of R. H. Sims & Co. and other judgment creditors of Kitchand.

4th. That the Court erred in deciding that the sale under the agreement was a Sheriff's sale, and the Sheriff, George W. Collier, was not a stakeholder or receiver of said fund until the termination of the litigation in Equity.

5th. That the Court erred in deciding that by having the

property levied on under the distress warrant, he was estopped from denying the title of Kitchand thereto.

H. MORGAN, for plaintiffs in error.

LYON & CLARK, and WARREN, for defendant in error.

*By the Court.*—STARNES, J. delivering the opinion.

[1.] Upon examination of the bill in Equity, as it appears in the transcript of the record in this case, we find no charge that the crop of 1851, or any part of it, made by Kitchand on the leasehold estate in question, was invested in any part of the property sold by the Sheriff. There is an interrogatory, it is true, calling on him to say whether or not any portion of this crop had been so invested; but such an interrogatory, fishing in its nature, because no foundation is laid for it in the bill, constitutes no part of that bill which the defendant is required to answer, and presents no equity.

A part of the prayer, which asks that the defendant may account fully for the disposition he has made of the crop of 1851, is also, for a similar reason, objectionable.

We also find from the structure of the bill, that no injunction is granted as to any portion of the property, except the proceeds of the crop of 1852, and the negroes. Neither does the bill state that any portion of the live stock levied on, was received from Davis, nor claim any equity on account of stock so received.

We accordingly think that the Court below was right in ruling on these points as he did. Nevertheless, we are constrained to send the case back for the following reasons:

[2.] The whole of the fund in the Sheriff's hands, out of which the Court directed payment to these several judgment creditors, was not a fund raised by the sale of defendant Kitchand's property, at Sheriff's sale in terms of the law, and therefore, not subject to the usual distribution as such, among the judgment creditors.

When property is levied on by the ministerial officer of the Court, the law points out and prescribes the way in which he must proceed to dispose of and sell the same, and thereby divest the title of the defendant. If, after such levy, the parties plaintiff and defendant come together and agree that the property shall not be sold according to the requirements of the Statute, but that it shall be disposed of by the Sheriff, in accordance with the terms of their agreement, and its proceeds held by him to await future litigation, and the sale takes place without any order of Court, sanctioning the same, such sale is not, technically, nor in the eye of the law, a Sheriff's sale ; that officer in making such sale, is not the ministerial officer of the Court, but the agent of the parties; and the Court cannot treat his acts in the premises, as the acts of its ministerial officer, or the proceeds of such sale as funds raised by Sheriff's sale in due form of law.

It is true, that the levy and seizure of the property, clothed the Sheriff with a qualified right in the same, but that ceased when the parties agreed that the levy should not be executed in the only way in which the law authorizes the Sheriff to execute it ; and when they interposed, with their consent, terms of sale, they paralyzed the arm of the ministerial officer, except as to the horses, hogs and cattle, which our Statute authorizes to be sold, as these were by this agreement ; and the Sheriff, in proceeding to sell without advertising as required by law, or for the time required by law, and not on the day and between the hours prescribed by the Statute, was no longer acting as such officer, but as their agent, under the agreement, and sold the property by virtue of it, and held the proceeds subject thereto, until the litigation contemplated should terminate.

The object of the money rule moved against the Sheriff in this case was, to distribute a fund thus raised, among the judgment creditors of the defendant ; a fund which, for the purposes of such a rule, was *coram non judice*, and the order o. the Court directed that it should be so distributed.

If that order had gone to the proceeds only of the horses,

Davis *vs.* Collier and others,

hogs and cattle, and the Sheriff's return had separated these from the other funds, no valid objection could have been made, for the reason given.    Under the term horses, we think mules should be included; and under that of cattle, we include sheep, the primary signification of the word authorizing this use of it.    The Sheriff's return, however, . makes no distinction between the proceeds of the live stock, and of the furniture, gin, plantation implements, &c.    Without an amendment of this return, then, no such order could properly be granted.

When the case goes back, the Sheriff can, perhaps, amend his return, separating the two funds.    The plaintiff in error may also, in the meantime, amend his bill, and if he present an equitable claim to the Judge, when the Court may again be moved to distribute this fund, or any part of it, his Honor will, no doubt, respect the notice of such equitable claim, examine it, and do what, in his opinion, the purposes of justice require.

So far as that portion of the fund is concerned, which is not the avails of the sale of live stock, and which is held by the Sheriff as agent or trustee for the parties, under the written agreement between them, until certain litigation shall terminate; it is not for us to prescribe the course which shall be taken with it, or the litigation which is to dispose of it.    But we deem it not improper to intimate, that the bill already filed can be made, in our opinion, to subserve the purposes of such litigation, in the most adequate and complete manner.

[3.] The only other assignment of error, which, under the view we take of this case, requires our notice, is that which alleges that the Court erred in holding that the levy of the distress warrant estopped Davis from denying the title of Kitchand. ·

An estoppel is a preclusion in law, which prevents a man from alleging or denying a fact, in consequence of his own previous act, allegation or denial of a contrary tenor. *Coke's Litt.* 352. *a. Steph. Pl.* 196.

It operates either as an estoppel from matter of *record*, that is, on account of some admission made in pleading in a Court

of Record, from the deed, or other such instrument in writing, of the party, or from matter *in pais*.

The former of these, this suing out and levy of the distress warrant, could not have been, for the simple reason, that even if it could be regarded as a matter of pleading in a Court of Record, the claim by the distress warrant was not in principle, though in form, " of contrary tenor " to the equitable claim set up in the bill. It was only a different remedy by which the plaintiff in error supposed he could obtain satisfaction for his rent.

In this act, there was, of course, no estoppel by deed; and it only remains for us to ascertain whether or not it was an estoppel *in pais.*

This form of estoppel operates only where the party has done some act, not of record, or reduced to the solemn form of a deed, or used some language whereby " *he has derived a benefit, or prejudiced another.*" In such case, he shall not be permitted to deny it. 1 *Saund. Pl.* 46. *Wallis vs. Truesdel*, 6 *Pick. R.* 456. *Tufts vs. Hays*, 5 *N. Hamp.* 452. *Nichols vs. Arnold*, 8 *Pick.* 175. *Owen vs. Bartholomew*, 9 *Pick.* 527.

The record in this case, does not authorize the conclusion, that any such benefit to the plaintiff in error, or prejudice to the parties litigating with him, as is contemplated by the law, resulted from the suing out and levy of this distress warrant.

There can be no doubt, that if the property had been sold under the levy of the warrant, the plaintiff would have been forever estopped as against all persons claiming under the sale, from denying the validity of such process; but that is not the case presented. Nothing, therefore, appears to authorize the conclusion that the plaintiff was estopped from pressing his equitable claim against this fund.