A92A1617. DIXON v. HOME INDEMNITY COMPANY.
(426 SE2d 381)

JOHNSON, Judge.

Dixon, an attorney, represented the plaintiffs in a civil action in the Superior Court of Fulton County. Within 45 days after the conclusion of that action, the defendants filed a motion seeking an award of attorney fees and expenses of litigation against Dixon personally, pursuant to OCGA § 9-15-14, alleging that the lawsuit was frivolous. Following a full evidentiary hearing on that motion, the trial court found that the lawsuit was frivolous, that it had no basis in law or fact, and that Dixon, rather than his clients, was responsible. The trial court entered an award of attorney fees against Dixon personally in the amount of $59,480.84. On appeal, the Supreme Court affirmed the award without opinion. See *Dixon v. Hubert*, 260 Ga. XXIX (1991).

Following the Supreme Court's decision, Dixon filed the instant declaratory judgment action against his professional liability insurer, The Home Insurance Company, seeking coverage for the award of attorney fees entered against him. Home filed an answer denying that Dixon's policy provided coverage for awards entered under OCGA § 9-15-14. The trial court entered judgment in favor of Home. Dixon appeals.

1. Dixon contends that the trial court erred in ruling that his policy did not cover awards of attorney fees and expenses of litigation under OCGA § 9-15-14 based upon its determination that such awards are "sanctions" within the meaning of the policy. We disagree.

Awards of attorney fees and expenses of litigation entered pursuant to OCGA § 9-15-14 are not expressly included in the "Exclusions" section of the insurance policy in question, and are not expressly excluded elsewhere in the policy. The policy does, however, contain the following provisions regarding coverage:

"Section B — Coverage

"I. Professional Liability and Claims Made Clause: To pay on behalf of insured all sums . . . which the Insured shall become legally obligated to pay as *damages* as a result of CLAIMS FIRST MADE AGAINST THE INSURED . . . caused by any act, error or omission for which the insured is legally responsible, and arising out of the rendering or failure to render professional services for others in the insured's capacity as a lawyer. . . .

"Damages, whenever used in this policy, means a monetary judgement (sic) . . . and does not include fines or statutory penalties, or *sanctions* whether imposed by law or otherwise. . . . (Emphasis supplied.)"

Because the policy does not expressly exclude from coverage damages arising from the application of OCGA § 9-15-14, nor does the policy define the term "sanction," we are left to determine whether the trial court erred in its interpretation of both the policy language and OCGA § 9-15-14. In doing so, we must apply the well-settled legal principles governing both statutory interpretation and interpretation of insurance policies.

We begin with the statute. "It is a fundamental rule of statutory construction that where the language of a statute is plain and unambiguous, the terms used therein should be given their common and ordinary meaning." (Citations and punctuation omitted.) *Capra v. Rogers*, 200 Ga. App. 131, 133 (1) (407 SE2d 101) (1991). When one applies this rule to a reading of OCGA § 9-15-14, it is clear that the intent of the statute is to deter attorneys and parties from filing frivolous lawsuits. It accomplishes this deterrent effect by requiring the party or attorney who is responsible for filing a frivolous lawsuit to pay the opposing party's attorney fees and expenses of litigation, thus deviating from the general rule that parties to lawsuits must bear their own attorney fees and expenses of litigation. See generally *Arrington v. Thompson*, 211 Ga. 734, 744 (8) (88 SE2d 402) (1955).

The word "sanction" means "a penalty or punishment provided as a means of enforcing obedience to a law." Black's Law Dictionary (4th ed. 1957). Though an award arising from a judgment under OCGA § 9-15-14 also serves the incidental purpose of providing compensation to the injured party, this does not diminish the reality that awards made under it are "sanctions" under the accepted definition of that term.

We now must look to the policy for any guidance it provides. We are bound by the principle that "[e]very insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy." (Punctuation omitted.) *S & T Timber v. Southern Gen. Ins. Co.*, 198 Ga. App. 18, 19 (400 SE2d 379) (1990); see also OCGA § 33-24-16. "An unambiguous policy requires no construction, and its plain terms must be given full effect even though they are

beneficial to the insurer and detrimental to the insured." (Citations and punctuation omitted.) *Liberty Nat. Ins. Co. v. Davis*, 198 Ga. App. 343, 344 (401 SE2d 555) (1991). Home contends that there is no coverage because the award was a "sanction" against Dixon, and that "damages" it is required to pay, as defined by the policy, expressly excludes sanctions. We agree.

The subject insurance policy does not define "sanction." In the absence of a definition within the policy, we must give the word its ordinary meaning. See OCGA § 13-2-2 (2). "Sanction" is clear and unambiguous. The dictionary definition referred to above is entirely consistent with the plain meaning of the phrase in the policy, which groups "sanction" with "fine" or "statutory penalty," as being excluded from coverage. It was not error for the trial court to conclude that an award of attorney fees under OCGA § 9-15-14 is a sanction within the meaning of the exclusion contained in Dixon's insurance policy.

2. In his second enumeration of error, Dixon contends that Home was estopped from denying coverage and the trial court erred in concluding otherwise. This enumeration is without merit.

"An estoppel arises where one makes representations to another concerning a matter about which the other acts to his injury." (Citation omitted.) *Peter E. Blum & Co. v. First Bank &c. Corp.*, 156 Ga. App. 680, 683 (2) (275 SE2d 751) (1980); *Davis v. Collier*, 13 Ga. 485, 491 (1853). In this case, if Home had made representations to Dixon to the effect that the claim he submitted was covered under his insurance policy and had subsequently denied coverage to Dixon after he had relied on the representations to his detriment, Home would have been estopped to deny coverage. Such did not occur here. Home never made representations to Dixon that his claim was covered under the policy. The record shows that on June 28, 1989, Dixon first communicated to Home that he anticipated the filing of a motion against him for attorney fees. Home did not discuss with Dixon whether coverage would be provided him, advising Dixon to wait until he received notice that the motion had actually been filed. He followed up this conversation with a letter in which he asserted that his policy would cover any damages and costs which would arise from an OCGA § 9-15-14 judgment rendered against him. Home did not respond to Dixon's letter. On July 12, 1989, after he received notice that a motion for attorney fees had in fact been filed against him, Dixon sent Home a second letter reiterating his position that the claim was covered and requesting a defense. Again, Home did not respond. On July 26, 1989, 14 days after Dixon informed Home that he had been served with a notice of motion, Home told Dixon that it was denying coverage. By letter dated October 19, 1989, Home again informed Dixon that his policy did not cover the claim.

We conclude that the doctrine of estoppel is inapplicable under the circumstances here because Home did not at any time make representations that it would provide coverage for Dixon's claim. Home's representations to the contrary were entirely consistent with its action denying coverage, and Home's refusal to provide coverage 14 days after it had been notified of Dixon's claim was not untimely. Accordingly, the trial court was correct in its finding that Home was not estopped from denying coverage.

3. Dixon contends that the trial court abused its discretion in excluding evidence of his "good faith" in the rendering of his legal services to the plaintiffs in the underlying action. The record shows that the trial court did permit some evidence of Dixon's "good faith" to be admitted for the purpose of allowing the court to construe the terms of the insurance policy. The court, however, did not permit evidence of Dixon's "good faith" which amounted to attempts by Dixon's counsel to retry issues which were adjudicated in the underlying action, the judgment in which was subsequently affirmed by the Supreme Court of Georgia. "A judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue . . . in the cause wherein the judgment was rendered. . . ." OCGA § 9-12-40. The trial court did not abuse its discretion in barring Dixon from reasserting his "good faith" representation of the plaintiffs in the underlying action because that issue had been conclusively decided against Dixon in the OCGA § 9-15-14 hearing.

*Judgment affirmed. Carley, P. J., and Pope, J., concur.*

DECIDED NOVEMBER 23, 1992 —
RECONSIDERATION DENIED DECEMBER 4, 1992 

*Coleman & Dempsey, R. Peter Catlin III,* for appellant.
*Freeman & Hawkins, Howell Hollis III, Kellie R. Casey,* for appellee.