545 S.E.2d 523

**FATHER, Respondent/Appellant,**

v.

**SOUTH CAROLINA DEPARTMENT OF SOCIAL SERVICES, Appellant/Respondent.**

In re Child 1, born 1/19/84, Child 2, born 9/26/86.

No. 3325.

Court of Appeals of South Carolina.

Heard Feb. 8, 2001.

Decided March 26, 2001.

Refiled March 27, 2001.

Rehearing Denied May 21, 2001.

Certiorari Granted Sept. 27, 2001.

---

58

Assistant General Counsel Susan Anderson, of SC Department of Social Services, of Columbia, for appellant/respondent.

Connie H. Payne, of Burnette & Payne; and Debbie S. Mollycheck, both of Rock Hill, for respondent/appellant.

Tony M. Jones, of Elrod, Jones, Leader & Benson, of Rock Hill, Guardian ad Litem.

GOOLSBY, Judge.

The South Carolina Department of Social Services appeals an award to the respondent/appellant (Father) under the South Carolina Frivolous Civil Proceedings Sanctions Act.[1] Father cross-appeals, alleging he is entitled to sanctions against the Department under Rule 11 of the South Carolina Rules of Civil Procedure. We affirm in part and reverse in part.

## BACKGROUND FACTS AND PROCEDURAL HISTORY

Father received legal custody of his two minor sons, Child 1 and Child 2, pursuant to a divorce and custody decree dated March 2, 1995. The custody issue was strongly contested by the children's mother. In an unpublished opinion dated February 9, 1998, this court affirmed the custody decision.

---

1. S.C.Code Ann. §§ 15–36–10 through –50 (Supp.2000).

On June 8, 1998, the Department received a report of suspected child abuse concerning Child 2, the younger child, who was then twelve years old.[2] Among other things, the reporter of the alleged incident stated to the Department that Father had shoved a pot scrubber brush into Child 2's mouth and hit him in the chest.[3] Another intake report, dated June 10, 1998, noted additional concerns.[4] After receiving these reports, the Department initiated an investigation.

On June 22, 1998, a Department investigator met with both Father and the children in Father's home. After interviewing both children together without Father being present in the room, the investigator discussed the matter with Father. Early in his interview with the investigator, Father signed a treatment plan presented by the investigator after being assured by the investigator that the plan would not go into effect until a thorough investigation was done. Father also signed a release authorizing any hospital, physician, school, clinic, or law enforcement agency to furnish information regarding the children to the investigator.

As the interview progressed, however, Father began to have concerns that the investigator was unwilling to review information he had sent her earlier about the custody suit. Consequently, Father contacted his attorney, who that same day sent a letter to the Department stating Father was rescinding the release and his agreement regarding the treatment plan, but both he and counsel would cooperate in the investigation. On July 2, 1998, Father's attorney hand-delivered to the

---

2. As noted in the excerpt from the appealed order quoted later in this opinion, the Department knew the reporter was children's mother.

3. The maltreatment factors enumerated in the intake sheet were as follows:

R/S physical violence in the home by Dad. Saturday afternoon Dad shoved a pot scrubber brush in child's mouth and hit.the child in the chest. R/S [Child 1] heard what was going on—he is not abused by the Dad. R/S child was upset and crying.

4. The intake sheet dated June 10, 1998, stated:

R/S Gun in the home. R/S Dad screams all the time; was taking tranquilizers in the past. Dad is very strong and is a control freak. Boys are afraid of dad. Child has run away in the past out of fear of dad. Dad destroys anything given to the children. The younger child would rather be in foster care.

investigator various documents from the prior custody action and subsequent appeal.

The Department concluded its investigation on July 29, 1998, and determined the case was indicated [5] for threat of physical abuse and mental injury. A Determination Fact Sheet dated July 31, 1998, cited certain "FACTS/OBSERVA-TIONS" [6] to support its decision and noted these facts or observations were supported by the children's statements and "collaterals."

On August 12, 1998, Father's attorney sent a letter to counsel for the Department, requesting an internal appeal of the Department's determination that the report was founded.[7] The Department, however, transferred the case to a caseworker, who designed a treatment plan requiring counseling and continued monitoring.[8] In August 1998, the Department prepared a "court information sheet" in anticipation of seeking judicial approval for intervention.

On September 2, 1998, Father's attorney wrote to counsel for the Department, noting among other things that "DSS did not communicate with the children's counselor or their prior Guardian ad Litem." On or about September 18, 1998, counsel for the Department left a voice message for Father's attorney stating the action would proceed in family court.

---

**5.** *See* S.C.Code Ann. § 20–7–650(C) (1985 and Supp.2000) (requiring the local child protective agency to investigate a report of suspected child abuse or neglect to determine whether the report is " 'indicated' or 'unfounded.' ").

**6.** The "FACTS/OBSERVATIONS" cited on the Determination Fact Sheet to support the Department's decision were as follows:

[Father] pushed a toilet brush into [Child 2's] mouth that had been used to clean the toilets before.
[Father] cusses [sic] at the children and calls them "faggots."
[Child 2] and [Child 1] are scared of [Father].
[Father] pushed the children w/his fingers in their chest.

**7.** *See* S.C.Code Ann. § 20–7–655(A) (Supp.2000) (requiring the South Carolina Department of Social Services to "provide a child protective services appeals process for review of indicated reports not otherwise being brought before the family court for disposition").

**8.** The treatment plan form noted Father was not cooperating and contained a handwritten notation stating "client fighting finding."

On September 22, 1998, however, before the Department initiated any court action, Father filed the present lawsuit, seeking an order determining the case to be unfounded. On September 25, 1998, the family court, after a hearing on September 23, issued an order: (1) appointing Dr. Jane Rankin, the guardian ad litem for the children in the custody matter, to serve in the same capacity in the present action; (2) appointing Tony M. Jones to serve as attorney for the guardian ad litem; and (3) restraining all Department employees from contacting the children without obtaining permission at least two days in advance from Rankin, Jones, and Father's attorneys. On November 9, 1998, the Department answered, seeking an order dismissing the action.[9]

The family court held a final hearing on March 3, 1999. At the hearing, Father submitted an affidavit in support of attorney fees and costs and moved for sanctions pursuant to the South Carolina Frivolous Civil Proceedings Sanctions Act and Rule 11 of the South Carolina Rules of Civil Procedure.

By order dated May 17, 1999, the family court found that "[t]he DSS case shall be unfounded and dismissed." In the order, the family court also declined to award Father attorney fees, costs, and sanctions. In support of its decision to deny this request, the family court cited *Spartanburg County Department of Social Services v. Little* to support its holding that "S.C.Code Ann. § 15–77–300 ... disallows recovery of attorney's fees against the State in all child abuse and neglect actions, regardless of whether the State lacked substantial justification to press the claim." [10] As to the applicability of the South Carolina Frivolous Civil Proceedings Sanctions Act, the family court held "that statute does not specifically override the provisions of S.C.Code Ann. § 15–77–300 ..., which

---

**9.** Correspondence included in the record indicates the Department received another report against Father on or about September 28, 1998, concerning events that allegedly occurred on September 27, 1998. It appears from this correspondence that Father's attorneys were made aware that the reporter was the children's mother. It is not clear how the Department handled the charges in this subsequent report.

**10.** *See Spartanburg County Dep't of Social Servs. v. Little,* 309 S.C. 122, 123, 420 S.E.2d 499, 500 (1992) ("We conclude that the award of attorney's fees against the State is inappropriate in child abuse and neglect actions...").

specifically precludes the award of fees against the State in child abuse and neglect actions." Similarly, the family court held "Rule 11 does not specifically provide that it is applicable to the award of attorney's fees against the State in child abuse and neglect actions."

Pursuant to Father's motion to alter or amend, however, the family court awarded Father $22,000 in attorney fees pursuant to the South Carolina Frivolous Civil Proceedings Sanctions Act. In granting Father relief under the Act, the family court held the Department "failed to conduct a proper or suitable investigation and the limited investigation it did conduct was performed in a grossly negligent manner." In so holding, the family court reasoned:

DSS did not act to secure a proper purpose. I find and conclude that if DSS had thoroughly investigated this matter, they could not have reasonably believed in the existence of the facts upon which its claims and defenses have been based. The findings of DSS against [Father] were frivolous. I further find and conclude that this litigation was extended because of the failure of DSS to properly investigate the allegations, and then they continued a vigorous defense of this case, despite the lack of credible evidence of abuse and neglect.... DSS form 3027 indicates DSS had full knowledge at the beginning of its investigation that the children's mother ... was making the report, that she had lost custody as a result of the Family Court trial and an appeal. DSS also had full knowledge at the beginning of its investigation that the mother had psychological problems and had been attempting to alienate the children from their father. DSS failed to conduct a proper or suitable investigation and failed to consider the evidence provided by [Father] prior to indicating the case. Because DSS was aware that the mother was the reporter, the prior litigation between the parents and the circumstances surrounding that litigation were relevant for consideration in the investigation of the abuse allegations.

## DISCUSSION

### The Department's Appeal

■ 1. The Department first asserts the family court erred in reversing its initial ruling that attorney fees are not

available under *South Carolina Department of Social Services v. Little.*[11] In support of its position, the Department contends that, notwithstanding the South Carolina Frivolous Civil Proceedings Sanctions Act, it is statutorily exempt from the assessment of sanctions in the form of attorney fees in child abuse and neglect actions. We disagree.

■■■■■ "The Court's primary function in interpreting a statute is to ascertain the intent of the General Assembly."[12] That intent must be gleaned from the language chosen by the legislature.[13] Statutes, however, should be "construed with reference to the whole system of law of which they form a part."[14] A statute as a whole "must receive practical, reasonable, and fair interpretation consonant with the purpose, design, and policy of lawmakers."[15]

Under South Carolina Code section 15–77–300, a prevailing party who has contested state action may "recover reasonable attorney's fees to be taxed as court costs against the appropriate agency" upon findings by the trial court "that the agency acted without substantial justification in pressing its claim" and "there are no special circumstances that would make the award of attorney's fees unjust."[16] The statute, however, further provides that "[t]he provisions of this section do not apply to . . . child abuse and neglect actions."[17]

---

11. 309 S.C. 122, 420 S.E.2d 499 (1992).

12. *Busby v. Moore,* 330 S.C. 201, 203, 498 S.E.2d 883, 884 (1998), *overruled in part on other grounds by Al–Shabazz v. State,* 338 S.C. 354, 527 S.E.2d 742 (1999).

13. *See Glover v. Suitt Constr. Co.,* 318 S.C. 465, 469, 458 S.E.2d 535, 537 (1995) ("The primary rule of statutory construction requires that legislative intent prevail if it can reasonably be discovered in the language used construed in light of the intended purpose.").

14. *Roche v. Young Bros., Inc.,* 332 S.C. 75, 81, 504 S.E.2d 311, 314 (1998) (citing 82 C.J.S. Statutes § 362 (1953)); *see also Glover,* 318 S.C. at 469, 458 S.E.2d at 537 ("Sections which are part of the same general statutory law of the state should be construed together and each given effect if it can be done by any reasonable construction.").

15. *TNS Mills, Inc. v. South Carolina Dep't of Revenue,* 331 S.C. 611, 624, 503 S.E.2d 471, 478 (1998).

16. S.C.Code Ann. § 15–77–300 (Supp.2000).

17. *Id.*

In *Little,* the South Carolina Supreme Court held section 15–77–300 precluded the family court from assessing attorney fees and costs against the state in a child abuse and neglect action notwithstanding the enactment of South Carolina Code section 20–7–420(38), which allows for the assessment of "suit money, including attorney's fees ... for or against a party to an action brought in or subject to the jurisdiction of the family court." [18]   Recovery under section 20–7–420(38), however, does not require a showing of bad faith on the part of the party against whom fees and costs are sought.

In contrast, the South Carolina Frivolous Civil Proceedings Sanctions Act provides for the assessment of attorney fees and court costs against "[a]ny person who takes part in the procurement, initiation, continuation, or defense of any civil proceeding if: (1) he does so primarily for a purpose other than that of securing the proper discovery, joinder of parties, or adjudication of the claim upon which the proceedings are based; and (2) the proceedings have terminated in favor of the person seeking an assessment of the fees and costs." [19]   The Act expressly defines the term "person" to include "any governmental entity." [20]   Unlike section 15–77–300, it has no provisions prohibiting its application against the state in child abuse and neglect actions.

The text of sections 15–36–10 through –50 refers only to assessments in the form of attorney fees and court costs. Nevertheless, we believe these provisions can be reconciled with section 15–77–300.   The very fact that the legislature entitled this chapter the "South Carolina Frivolous Civil Proceedings Sanctions Act" indicates the chapter was not enacted solely to compensate an aggrieved party for expenses incurred

---

**18.**   S.C.Code Ann. § 20–7–420(38) (Supp.2000).   Item (38) took effect June 7, 1990, almost five years after the effective date of section 15–77–300.

**19.**   S.C.Code Ann. § 15–36–10 (Supp.2000).

**20.**   *Id.*

to fight a baseless claim.[21] Moreover, this legislation is unique in that it requires a litigant seeking relief under its provisions to show the adverse party acted to further a purpose that is not a legitimate objective of good faith litigation. This requirement goes beyond showing the adverse party "acted without substantial justification in pressing its claim," the prerequisite for recovering against a governmental agency under section 15–77–300.

■ In view of the designation of sections 15–36–10 through –50 as a "sanctions act" and the stringent requirements for recovery under these provisions, we hold an award of sanctions against the South Carolina Department of Social Services in a child abuse and neglect action is not necessarily barred by section 15–77–300. Although awards under the South Carolina Frivolous Civil Proceedings Sanctions Act are limited to attorney fees and costs, this limitation serves only as a measure of the sanctions allowable under the Act and does not undermine the fundamental objective of deterring egregious misuses of the court system by governmental agencies as well as by private parties.[22]

■ 2. We disagree with the Department's argument that the family court did not have jurisdiction to determine what constitutes a negligent child protective services investigation. Liability under the Act can attach upon the requisite showing

---

**21.** *See Joytime Distrib. & Amusement v. State*, 338 S.C. 634, 649, 528 S.E.2d 647, 655 (1999) ("[I]t is proper to consider the title or caption of an act in aid of construction to show the intent of the legislature[.]") (citing *Lindsay v. Southern Farm Bureau Cas. Ins. Co.*, 258 S.C. 272, 188 S.E.2d 374 (1972)); 73 Am.Jur.2d *Statutes* § 98, at 322 (1974) ("[I]t is a generally accepted view of the United States that resort may be had to the title of an act as an aid in its interpretation.").

**22.** *See* Rule 54(e)(1), SCRCP ("Costs Authorized by Statute and Sanctions Imposed in Favor of Prevailing Party. All sanctions *including reasonable attorneys fees*, if ordered, imposed upon another party and in favor of the prevailing party under any statute or Rule of Civil Procedure are taxable ....") (emphasis added); *cf. Dixon v. Home Indem. Co.*, 206 Ga.App. 623, 426 S.E.2d 381, 382 (1992) ("Though an award arising from a judgment under [Georgia's statute authorizing litigation costs and attorney fees for frivolous actions and defenses] also serves the incidental purpose of providing compensation to the injured party, this does not diminish the reality that awards made under it are 'sanctions' under the accepted definition of the term.").

of inappropriate conduct in "any civil proceeding." [23]   Without question, the family court has jurisdiction to interpret and apply the South Carolina Frivolous Civil Proceedings Sanctions Act.[24]

■ 3.   The Department further contends that an award of attorney fees was error because its case decision was not an adjudication of civil proceedings.   In our view, this argument evidences a misunderstanding of the procedural history of this case and the reasoning behind the family court's decision to impose sanctions.   The sanctions were based not only on the family court's finding that the Department "failed to thoroughly investigate this matter ... and ... [Father] was unable to have the case unfounded by any other means," but also on its determination that, even after the lawsuit was filed, the Department and its attorneys failed to further investigate the allegations against Father despite numerous opportunities to do so.[25]

■ 4.   Regarding the merits of the Department's appeal, however, we hold the facts of this case do not warrant the harsh sanctions imposed by the family court.

■ "The determination of whether attorney's fees should be awarded under the Frivolous Proceedings Act is treated as one in equity." [26]   In reviewing such an award, an appellate court may take its own view of the evidence.[27]

A litigant seeking relief under the Act "has the burden of proving" of all the statutory prerequisites for recovery, including a showing that "the primary purpose for which the proceedings were procured, initiated, continued, or defended was

---

23.   S.C.Code Ann. § 15–36–10.

24.   See Kilcawley v. Kilcawley, 312 S.C. 425, 440 S.E.2d 892 (Ct.App. 1994) (affirming an award under the Act in a family court matter).

25.   See S.C.Code Ann. § 15–36–10 (stating a person who takes part in the continuation or defense of a civil proceeding can be subject to liability under the South Carolina Frivolous Civil Proceedings Sanctions Act).

26.   Hanahan v. Simpson, 326 S.C. 140, 156, 485 S.E.2d 903, 912 (1997).

27.   Id.; Kilcawley, 312 S.C. at 427, 440 S.E.2d at 893.

not that of securing the proper discovery, joinder of parties, or adjudication of the civil proceedings...."[28] Moreover, the Act expressly provides that a person "must be considered to have acted to secure a proper purpose ... if he reasonably believes in the existence of the facts upon which his claim is based and ... reasonably believes that under those facts his claim may be valid under the existing or developing law...."[29]

We are mindful of the problems cited by both Father and the family court concerning the Department's investigation of the serious allegations in the report. Nevertheless, we hold the preponderance of the evidence shows Father failed to meet his burden of proving the Department did not act to secure a proper purpose.

It is apparent from Father's own testimony that he held a device used to clean the household toilets two or three inches from Child 2's face, at which time the child "swung at" his father. Despite the confusion as to whether the device was a pot scrubber or a toilet brush, the conflicting evidence as to whether the device was actually placed in the child's mouth, and the Department's failure to make certain inquiries requested by Father and his attorneys, it is our view, after reviewing the record in its entirety, that Father did not show the Department's decision to pursue the matter further was unreasonable or improperly motivated.

First, regardless of whether the device involved was a pot scrubber or a toilet brush, it was undisputed that it had been used to clean toilets. We cannot fault the investigator for her concern "that they could receive e-coli from a toilet brush after it has been in a commode."

Second, the Department's decision to become involved in the case was based not only on Father's allegedly pushing a toilet brush into Child 2's mouth, but also on concerns of mental injury to both children. Whether or not the specific allegations of mental injury were true, the Department investigator testified in her deposition that, while she was interviewing Child 1 and Child 2, both children would "freeze" and "hush"

---

28. S.C.Code Ann. § 15–36–40(3).

29. *Id.* § 15–36–20(1).

when Father would walk back and forth. When the investigator asked the children whether they were "scared of somebody," both children became visibly upset.[30] The investigator described the "demeanor of the children and how they cringed every time [Father] would walk past the doorway" to other Department employees before a group determination as to how to proceed on the case was made.

Finally, notwithstanding vigorous arguments by Father's attorneys about the Department's alleged refusal to interview certain mental health professionals, the evidence at trial fails to convince us that the information these professionals would have given had they been consulted earlier would have been sufficient to alleviate the concerns raised in the report.

Dr. Tyson, who performed psychological examinations on the children for the custody action in 1994, was not actively involved with the family at the time of the present lawsuit, some four years later. He stated his current contact with Father and the children consisted of "casual observation" and "regular feedback" from Dr. Marcus, the children's current counselor.[31]

From what we can tell, Dr. Marcus, the children's current counselor, did not testify at the hearing, either in person or by deposition, and the record on appeal does not include any reports or other documents from her about the case. Moreover, Dr. Tyson testified that Dr. Marcus was seeing the children only on an "as needed" basis, presumably as deter-

---

**30.** The investigator testified, "They were in tears. They were extremely scared of [Father]." She further testified that "they were very convincing to me. They were upset. And you don't—Obviously—How old is— [Child 1 is] 14—for a boy to cry that old—Nobody can manipulate you to the point of somebody crying in front of a stranger that he doesn't even know."

Furthermore, we believe Father mischaracterizes the investigator's assessment of the children's statement that they were living with their father because "dad paid the judge off." Contrary to what Father says in his respondent's brief, the investigator never said she found this statement credible, only that she felt the children believed what they were saying and she could not rule out anything.

**31.** In fact, Dr. Tyson's reports had been sent to the investigator by either Father or his attorneys, and the investigator testified she had considered them but did not give them any weight because "Dr. Tyson's statements were before this case."

mined by Father, and appointments had become increasingly less frequent because the children's relationship between Father and the children had stabilized since the time Father and the children's mother had divorced.

Although Dr. Rankin served as guardian ad litem for the children in both the custody action and the present matter, the portion of her testimony reproduced in the record was unclear as to the extent of her involvement with the children at the time the matter first came to the Department's attention. Moreover, Dr. Rankin's testimony concerning what Child 2 told her about the altercation appears to support the Department's concerns that the child was afraid of his father.[32]

The specific factual circumstances of this case, then, warrant a finding by this court that Father did not show the Department abused its discretion in determining the reports it had received against him were "indicated."[33] We therefore reverse the family court's imposition of sanctions against the Department.

### Father's Appeal

■ Father asserts the family court erred in failing to award sanctions in the form of attorney fees against the Department pursuant to Rule 11 of the South Carolina Rules of Civil Procedure. We disagree.

Rule 11(a), SCRCP, provides in part as follows:

The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information and belief there is good ground to support it; and that it is not interposed for delay.

. . .

If a pleading, motion or other paper is signed in violation of this Rule, the court, upon motion or upon its own initiative,

---

**32.** On direct examination by her attorney, Dr. Rankin stated, "As [Father] walked past [Child 2], [Child 2] said he put his hand up to defend himself because he thought he was going to push it at him, and that is all [Child 2] told me."

**33.** *See South Carolina Dep't of Social Servs. v. Pritcher*, 329 S.C. 242, 495 S.E.2d 242 (Ct.App.1997), *cert. denied* (August 14, 1998) (stating the Department's duties in child abuse and neglect cases require the agency's exercise of discretion).

may impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney's fee.

The criteria for Rule 11 sanctions are essentially the same as those for sanctions under the South Carolina Frivolous Civil Proceedings Sanctions Act.[34] Because we have held that the facts of this case do not warrant the imposition of sanctions against the Department pursuant to the Act, we likewise affirm the family court's refusal to sanction the Department under Rule 11.

**AFFIRMED IN PART, REVERSED IN PART.**

CURETON and CONNOR, JJ., concur.

---

**34.** *Cf.* Susan Taylor Wall & Joseph R. Weston, *An Analysis of Current Theories of Liability*, 45 S.C. L.Rev. 857, 871 (1994) ("Because many of the terms used in the Act also appear in Federal Rule 11, the South Carolina courts may look to decisions interpreting the Federal Rule to determine what constitutes a proper purpose and good faith with respect to potential liability of attorneys under the Act."). It appears that the principal difference between the Act and Rule 11 is that the application of Rule 11 is limited to "the person who signed [the document in violation of Rule 11], a represented party, or both," whereas the Act can be invoked against "any person who takes part" in frivolous litigation.