[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-12399
Non-Argument Calendar
_____

D.C. Docket No. 9:14-cv-81579-KLR


JONES, FOSTER, JOHNSTON & STUBBS, P.A.

Plaintiff-Appellant,

versus

PROSIGHT-SYNDICATE 1110 AT LLOYD'S,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(February 14, 2017)

Before TJOFLAT, WILLIAM PRYOR and FAY, Circuit Judges.

PER CURIAM:

This appeal concerns whether professional liability insurer ProSight-Syndicate 1110 at Lloyd's ("ProSight") was contractually obligated to defend several attorneys employed by its insured, Jones, Foster, Johnston & Stubbs, P.A. ("Jones Foster"), against a motion for an order to show cause why they should not be held in contempt and sanctioned. After Prosight refused to provide a defense, Jones Foster initiated this action seeking both damages for breach of contract and declaratory relief. ProSight responded by filing a motion to dismiss under 12(b)(6) of the Federal Rules of Civil Procedure claiming that the insurance policy at issue did not create any obligation to defend Jones Foster's employees against the underlying contempt motion. The District Court granted Prosight's motion to dismiss with prejudice. After careful review of the parties' briefs and the record, we affirm.

I.

Prosight issued a Primary Lawyer's Professional Liability Insurance Certificate (the "Policy") to Jones Foster covering the time period between May 1, 2013 and May 1, 2014. The Policy purported to cover "all sums which the Insured shall become legally obligated to pay as damages for claims . . . arising out of any act, error, [or] omission . . . in the rendering of or failure to render Professional Services by any Insured covered under this policy." The Policy also obligated Prosight to "defend any suit against the Insured seeking **Damages** to which this

2

insurance applies."  Under the Policy, a claim is "a demand for money or services . . . [but does not] include proceedings seeking injunctive or other non-pecuniary relief."  And, damages are "compensatory judgments, settlements or awards [not including] punitive or exemplary damages, **sanctions**, fines or penalties assessed directly against any insured."  It is undisputed that the Policy applied to Jones Foster as an entity as well as all the lawyers employed by the firm.

When the Policy first went into effect, attorneys employed by Jones Foster were representing Gary Donald Carroll in a defamation suit filed in the Circuit Court of the Fifteenth Judicial Circuit of Florida, in and for Palm Beach County, against TheStreet.com, Inc., an online news source.  *See Carroll v. TheStreet.com, Inc.*, No. 502008CA021014XXXXMB AN (Fla. Cir. Ct. 2008).  One issue in that litigation involved whether the Florida statutory journalist's privilege extended to protect TheStreet.com's sources, the identities of which the TheStreet.com had inadvertently disclosed to Carroll during discovery.  Pertinent to the instant case, the Circuit Court entered an order granting TheStreet.com's motion for a protective order concerning those disclosures that barred Carroll from "any further use of, reference to, or reliance on, the privileged information."  *TheStreet.com, Inc. v. Carroll*, 20 So. 3d 947, 950 (Fla. Dist. Ct. App. 2009).  Following an extensive

3

investigation, Carroll claimed that he had independently identified Third Point[1] as the source of the defamatory statements, and amended his complaint to add Third Point as a defendant.  The case was subsequently removed by Third Point to the United States District Court for Southern District of Florida.  *See Carroll v. TheStreet.com, Inc.*, No. 9:11-cv-81173 (KLR) (S.D. Fla. 2011).

After months of motion practice and discovery concerning whether Carroll used privileged information to identify it as the source of the allegedly defamatory statements, Third Point moved the District Court to issue an order requiring Carroll, and his attorneys, collectively referred to in the motion as "Jones Foster,"[2] to show cause why they should not be held in contempt and sanctioned for their use of privileged information in direct violation of the Circuit Court's protective order (the "Contempt Motion").[3]  In the motion, Third Point argued that the court should impose sanctions pursuant to Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and its own inherent powers to punish misconduct for, among other things,

---

[1] For the purposes of this appeal, we refer to all of TheStreet.com's sources—James Carruthers, Third Point LLC, and Third Point Advisors LLC—as "Third Point."

[2] The motion also specifically singled out two lawyers at the firm, Robert Wilkins and Steven Rothman, as particularly deserving of sanctions.

[3] Upon removal of the case to the Southern District of Florida, the Circuit Court's protective order was treated as an order of the District Court.  *See Johnston v. Tampa Sports Auth.*, 530 F.3d 1320, 1324 (11th Cir. 2008) (explaining that "[a]fter removal, orders issued by the state court are considered orders of the district court") (citing *Jackson v. Am. Sav. Mortg. Corp.*, 924 F.2d 195, 198 (11th Cir. 1991)).

the filing of an affidavit that Carroll's lawyers knew to be materially false.[4] The

Contempt Motion sought the following remedies for the alleged misconduct of

Caroll and his lawyers:  (1) removal of all references to Third Point in the lawsuit;

(2) dismissal of Carroll's claims against Third Point with prejudice; and (3)

attorneys' fees and costs incurred by Third Point in the litigation.

On June 5, 2013, Jones Foster filed a claim requesting that ProSight defend

its lawyers against the Contempt Motion pursuant to the terms of the Policy.  After

a preliminary investigation, Prosight declined the request explaining that the

remedies sought by the Contempt Motion, sanctions and non-pecuniary damages,

were specifically excluded from coverage.  Consequently, it had no obligation to

defend Jones Foster's lawyers, specifically Wilkins and Rothman, with respect to

Third Point's motion.[5]

On November 10, 2014, Jones Foster commenced this action against

Prosight alleging breach of contract, breach of the covenant of good faith, and

declaratory relief in in the Circuit Court of the Fifteenth Judicial Circuit, in and for

---

[4] In relation to its petition for sanctions under 28 U.S.C. § 1927, Third Point also alleged that Jones Foster unreasonably multiplied the proceedings by withholding from production documents relating to the investigation, thereby spawning the need for additional discovery that would have been unnecessary in light of those documents.

[5] After receiving ProSight's notice of denial of coverage, Jones Foster proceeded to hire a private firm to represent it at the show cause hearing.  Following the hearing, the District Court denied Third Point's motion, concluding that it did not find clear and convincing evidence that Carroll, Jones Foster, Wilkins, or Rothman violated the Circuit Court's protective order because Carroll could have identified TheStreet.com's sources independently of the privileged information.  *Carroll*, No. 9:11-cv-81173 (KLR) Doc. 489.

Palm Beach County, Florida.[6] Prosight removed the action to federal court in the Southern District of Florida on December 19, 2014. Days later, Prosight filed a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), arguing that the plain terms of the Policy specifically excluded coverage for proceedings seeking sanctions and other non-pecuniary forms of relief. The District Court agreed, and in its well-reasoned and comprehensive order held, that the Policy's plain language extended insurance coverage, and a corresponding duty to defend, only to claims seeking damages, not including sanctions. Because civil contempt is a sanction, no coverage existed under the Policy. Accordingly, the District Court explained that Prosight was not obligated to defend Jones Foster or the firm's attorneys, and, on May 1, 2015, granted Prosight's motion dismissing Jones Foster's lawsuit with prejudice. This appeal follows.

## II.

We review both the District Court's grant of a 12(b)(6) motion to dismiss and its interpretation of an insurance contract *de novo*, "taking as true the facts alleged in the complaint." *James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1273–74 (11th Cir. 2008). We are also obligated to "draw all reasonable inferences in the plaintiff's favor." *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010) (citation omitted). A motion to dismiss should not be granted if a

---

[6] During the proceedings in District Court, Jones Foster eventually withdrew its claim that Prosight breached its covenant of good faith.

6

plaintiff's "complaint . . . contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1974) (2007)).  But, we may dismiss a complaint on a dispositive issue of law.  *See Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

### III.

In a breach of contract action, a federal court sitting in diversity must "apply the substantive law of the forum state unless federal constitutional or statutory law compels a contrary result." *Technical Coating Applicators, Inc. v. U.S. Fid. & Guar. Co.*, 157 F.3d 843, 844 (11th Cir. 1998).  So, we look toward Florida law to determine the proper scope of Prosight's duty to defend under the Policy.  In Florida, "a liability insurer's obligation to defend a claim made against its insured must be determined from the allegations in the complaint." *Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.*, 470 So. 2d 810, 813 (Fla. Dist. Ct. App. 1985).[7] This obligation to defend is substantially broader than the insurer's duty to

---

[7] While the principle concerning the extent of an insurer's duty to defend typically is employed in analyzing the allegations of a complaint filed against an insured, the Supreme Court of Florida has extended this rule to include allegations contained in filings other than a complaint.  *See Pioneer Nat'l Title Ins. Co. v. Fourth Commerce Props. Corp.*, 487 So. 2d 1051, 1053–54 (Fla. 1986) (concluding that the principle that the allegations of the complaint govern the duty to defend are "directly applicable" when analyzing the allegations of a foreclosure proceeding).  Accordingly, we apply this well-established procedure to examine only the allegations contained in the motion for an order to show cause.

Case: 15-12399    Date Filed: 02/14/2017    Page: 8 of 18

indemnify and even when the allegations in the complaint are "partially within and partially outside the coverage of the policy, the insurer is obligated to defend the entire suit." *Category 5 Mgmt. Grp. v. Companion Prop. & Cas. Ins. Co.*, 76 So. 3d 20, 23 (Fla. Dist. Ct. App. 2011) (citation omitted); *see also Jones v. Fla. Ins. Guar. Ass'n*, 908 So. 2d 435, 443 (Fla. 2005) (explaining that "[t]he duty to defend is of greater breadth than the insurer's duty to indemnify, and the insurer must defend even if the allegations in the complaint are factually incorrect or meritless"). Indeed, "[t]he actual facts of the situation are not pertinent; 'the trial court is restricted to the allegations of the complaint, regardless of what the defendant and others say actually happened.'" *State Farm Fire and Cas. Co. v. Higgins*, 788 So. 2d 992, 996 (Fla. Dist. Ct. App. 2001) (quoting *Marr Invs., Inc. v. Greco*, 621 So. 2d 447, 449 (Fla. Dist. Ct. App. 1993)).

All doubts regarding the insurer's potential duty to defend must be resolved in the insured's favor. *See Jones*, 908 So. 2d at 443. But, the insurer's duty is not unlimited, and the "[insurance] company is not required to defend if it would not be bound to indemnify the insured even though the plaintiff should prevail [in the underlying action]." *National Union Fire Ins. Co. v. Lenox Liquors, Inc.*, 358 So. 2d 533, 535 (Fla. 1977).

Under Florida law, the terms used in an insurance contract are given their ordinary meaning, and the policy must be construed as a whole giving "every

8

provision its full meaning and operative effect." *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000).   If policy language is susceptible to multiple, reasonable interpretations, the insurance policy is considered ambiguous and must be "interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy." *Id.*   But, to allow for such a construction the insurance policy "must actually be ambiguous." *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005).   Courts are not authorized to put a strained or unnatural construction on the terms of a policy in order to create an uncertainty or ambiguity." *Jefferson Ins. Co. of N.Y. v. Sea World of Fla. Inc.*, 586 So. 2d 95, 97 (Fla. Dist. Ct. App. 1991).

## A.

There is no ambiguity here.  The Policy obligates Prosight to indemnify Jones Foster and its attorneys only for "damages for claims," and to defend them only in "suit[s] against the Insured seeking Damages."  Damages are defined in the Policy to include only "compensatory judgments, settlements, or awards" but not "sanctions" or other penalties.[8]  Claims are defined as "a demand for money, or services, or the filing of a suit . . . not includ[ing] proceedings seeking injunctive or other non-pecuniary relief."  So, there is no question that the plain terms of the

---

[8] The Policy does not offer a definition of sanction, but the term is commonly defined as "[a] penalty or coercive measure that results from failure to comply with a law, rule, or order." BLACK'S LAW DICTIONARY 1541 (10th ed. 2014).

Policy relieve Prosight of any duty to defend against proceedings seeking monetary sanctions or non-pecuniary relief.

A review of the underlying Contempt Motion quickly demonstrates that it was not a suit against Jones Foster, or its attorneys, for a compensatory judgment or award. Instead, the underlying Contempt Motion sought an "order to show cause why . . . attorneys at Jones Foster . . . should not be held in contempt and sanctioned for their willful violation of [a court order]." The motion repeatedly asked the court to hold involved Jones Foster lawyers in contempt and to **sanction** them pursuant to the court's inherent authority, Rule 11of the Federal Rules of Civil Procedure 11, and 28 U.S.C. § 1927. The Contempt Motion further requested that the court **sanction** the involved attorneys by striking all claims against Third Point from the case and requiring they pay the attorney's fees and costs incurred by Third Point as a consequence of their misconduct. There is simply no suggestion that the Contempt Motion underlying this action involved anything other than an attempt to sanction lawyers employed by Jones Foster for "their contumacious and outrageous conduct." And, the Policy makes crystal clear that only suits seeking "compensatory judgments, settlements, or awards" trigger a duty to defend on the part of Prosight. In the words of the District Court below, "[b]ecause the contempt motion sought sanctions . . . [rather than compensatory damages], [Prosight] did not have a duty to defend [Jones Foster]."

10

Jones Foster seeks to avoid this conclusion by arguing that the attorney's fees and costs sought in the Contempt Motion were compensatory in nature and accordingly the claim below was, at least in part, covered by the terms of the Policy.[9] This argument is unconvincing.  It is true, as noted by the District Court, that civil contempt serves the dual purpose of "enforc[ing] compliance with a court order [and] compensat[ing] an injured party." *In re Stewart*, 571 F.2d 958, 963 (5th Cir. 1978).  Likewise, Jones Foster is correct in pointing out that monetary awards for a finding of civil contempt are compensatory and remedial in nature rather than strictly punitive.  *See, e.g.*, *International Union, United Mine Workers v. Bagwell*, 512 U.S. 821, 827–28, 114 S. Ct. 2552, 2557, 129 L. Ed. 2d 642 (1994) (explaining that criminal contempt sanctions are punitive in nature while civil contempt sanctions are remedial).  But, this argument fails to recognize sanctions may serve a remedial, compensatory purpose while retaining their essential character as a punishment.  *See, e.g.*, *id.* at 841 (noting that "'[p]unishment in criminal contempt cannot undo or remedy the thing which has been done, but in

_____

[9] We agree with Jones Foster that the District Court erroneously classified contempt of court as a non-pecuniary form of relief that was not considered a claim under the Policy.  The Contempt Motion explicitly made a demand for money, in the form of attorney's fees and cost, and accordingly constituted a potentially indemnifiable claim.  And, even though the motion also sought various forms of non-pecuniary relief, so long as the allegations made are at least "partially within . . . the coverage of the policy, the insurer is obligated to defend the entire suit." *Category 5 Mgmt. Grp. v. Companion Prop. & Cas. Ins. Co,*, 76 So. 3d 20, 23 (Fla. Dist. Ct. App. 2011).  However, this point is irrelevant as we find that the pecuniary award sought in the Contempt Motion is a sanction.  Accordingly, it does not meet the Policy definition of indemnifiable damages, and fails to trigger Prosight's contractual duty to defend.

11

civil contempt punishment remedies the disobedience'") (citation omitted); *Sizzler Family Steak Houses v. W. Sizzling Steak House, Inc.*, 793 F.2d 1529, 1534 (11th Cir. 1986) (finding that "the district court's judgment of contempt and the accompanying sanction served a valid compensatory purpose").[10]

The assessment of attorney's fees and costs pursuant to a contempt finding is a paradigmatic example of a sanction serving a compensatory purpose while still functioning as a punishment. Under the American Rule, it is axiomatic that parties bear their own attorney's fees and costs as a matter of course. *See Baker Botts L.L.P. v. ASARCO LLC*, 135 S. Ct. 2158, 2164, 192 L. Ed. 2d 208 (2015) (explaining that "'[o]ur basic point of reference when considering the award of attorney's fees is the bedrock principle known as the American Rule: Each litigant pays his own attorney's fees, win or lose'") (citation omitted). Specific contractual or statutory authorization is required for the court to award attorney's fees and costs at the conclusion of litigation. *Id.* Although attorney's fees are necessarily a compensatory award, assessing these fees pursuant to a contempt finding, absent statutory or contractual authorization, effectively penalizes the wrongdoer who is now forced to bear an unnecessary, and often significant, cost as a result of her

---

[10] Jones Foster further contends that "[t]he fact that civil contempt was the form by which Third Point sought compensation for its damages is insignificant to ProSight's duty to defend." On the contrary, while the form of the proceeding may not be dispositive, Florida law dictates that the duty to defend arises solely from the allegations contained in the Complaint. *See Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.*, 470 So. 2d 810, 813 (Fla. Dist. Ct. App. 1985). Here, those allegations plainly encompass only sanctions and not compensatory damages.

contemptuous behavior.  Jones Foster provides no case that refutes this common sense conclusion.

To the contrary, the cases Jones Foster references repeatedly refer to compensatory awards linked to civil contempt findings as sanctions.  *See Sizzler*, 793 F.2d at 1534–37.[11]  And, existing case law discussing compensatory awards made pursuant to a contempt of court judgment also uniformly refers to those awards as sanctions.  *See, e.g.*, *Citronelle-Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1297, 1304 (11th Cir. 1991) (noting that "[t]he court has the power to impose coercive and compensatory sanctions.").   Although Florida law makes clear that ambiguities in an insurance contract must be "construed in favor of coverage," the policy "must actually be ambiguous" to allow for such a construction.  *Taurus Holdings*, 913 So. 2d at 532.  We decline to find such ambiguity here.

## B.

Jones Foster argues separately that the Policy's Exclusion Clause independently requires ProSight to defend the Contempt Motion.  That clause

---

[11]In any event, the two cases Jones Foster relies on in making this argument, *Sizzler Family Steak Houses v. W. Sizzling Steak House, Inc.*, 793 F.2d 1529 (11th Cir. 1986) and *Lewis v. S.S. Baune*, 534 F.2d 1115 (5th Cir. 1976), are inapposite.  Neither case occurs in the context of a dispute over an insurance policy, or even discusses whether a compensatory contempt judgment is still properly considered a sanction.  To the contrary, we assumed in *Sizzler* that civil contempt is still a sanction, even when it serves a compensatory purpose.  *See Sizzler*, 793 F.2d at 1535 (describing an award of compensatory attorney's fees as an appropriate part of a "contempt sanction").  *Lewis* offers even less support for Jones Foster's position, and is silent with respect to whether civil contempt is properly considered a sanction.  *Lewis*, 534 F.2d at 1119.  Jones Foster has simply failed to offer any legal support for its argument that a compensatory remedy imposed pursuant to a contempt of court judgment is no longer a sanction.

excludes coverage for claims "[a]rising out of any dishonest, fraudulent, criminal or malicious act or omission, or deliberate misrepresentations," but provides that ProSight will provide defense of such claims until the underlying actions are actually ruled dishonest, fraudulent, criminal or malicious. Jones Foster construes this clause as extending a duty to defend all claims alleging conduct of a dishonest or fraudulent nature, even if those proceedings would not otherwise be covered by the Policy.

While it is true that Florida law commands that "exclusionary clauses are construed even more strictly against the insurer than coverage clauses," we again decline Jones Foster's invitation to manufacture illusory ambiguity. *Anderson*, 756 So. 2d at 34. Well established Florida law dictates that "courts should read each [insurance] policy as a whole, endeavoring to give every provision its full meaning and operative effect." *Id.* Consequently, exclusionary clauses must be read *in pari materia* with other relevant provisions of the insurance contract. *See U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871, 877 (Fla. 2007).

Here, the Exclusion Clause provides simply "[t]his insurance does not apply to any claims . . . [a]rising out of any dishonest, fraudulent, criminal or malicious act . . . . however, we will provide a defense of such actions until . . . the act is ruled . . . dishonest, fraudulent, criminal or malicious." Read in isolation, this provision could potentially be construed to obligate Prosight to defend attorneys at

14

Jones Foster in proceedings that allege dishonest or fraudulent acts, even when those proceedings would not otherwise be covered by the Policy. But, such an approach would read the Policy's coverage provisions—which make clear that Prosight's duty to defend extends only to claims for "compensatory judgments, settlements or awards," not "sanctions"—out of the document. We thus decline to adopt the myopic reading of this provision suggested by Jones Foster.

It is evident, based on the terms of the Policy as a whole, that the Exclusion Clause does not fashion new obligations; instead, it acts as a bar to claims that otherwise would be covered pursuant to the Policy—claims seeking "compensatory judgments, settlements or awards." The exclusion for claims arising out of dishonest or fraudulent conduct becomes relevant only if coverage would exist under the Policy in the first instance. Here, there is no duty to defend, and so the Exclusion Clause never comes into play.

## C.

Jones Foster also contends that even if this Court concludes that ProSight did not owe a duty to defend because Third Point's motion was one for sanctions excluded explicitly from coverage under the Policy, it nevertheless was obligated to defend firm because the Policy excepts only "sanctions . . . assessed directly against any Insured" and the Contempt Motion sought indirect sanctions against Jones Foster as an entity based on the misconduct of its lawyers, especially

Wilkins and Rothman.  Jones Foster points out that because the Policy precludes coverage only for direct sanctions imposed against the firm, it must be read to include coverage for indirectly assessed sanctions.   And it is true that the Policy's use of the word "directly" in the phrase "assessed directly against" supports the conclusion that a claim for indirect assessment of sanctions is not excluded from coverage by the Policy.  *See Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n*, 117 F.3d 1328, 1338 (11th Cir. 1997) (explaining that "'[a]n interpretation which gives a reasonable meaning to all provisions of a contract is preferred to one which leaves a part useless or inexplicable.'") (quoting *Premier Ins. Co. v. Adams*, 632 So. 2d 1054, 1057 (Fla. Dist. Ct. App. 1994)).

But, regardless of the import of this provision, the underlying Contempt Motion plainly did not seek indirect sanctions against Jones Foster as an entity. The underlying Contempt Motion asserts no theory of vicarious liability and instead directly sought "an order to show cause why Plaintiff . . . and his attorneys at Jones Foster Johnston & Stubbs ("Jones Foster") . . . should not be held in contempt and sanctioned."  The Contempt Motion explicitly defined the term Jones Foster to refer to the attorneys representing the Plaintiff in the underlying action. Thus, the firm as a whole was never the subject of the Contempt Motion.  Instead, the Contempt Motion sought sanctions only against the attorneys actually involved in the underlying action, particularly Wilkins and Rothman.  And, the Contempt

16

Motion did not advance any theory that would implicate the firm as an independent entity subject to sanctions for the actions of its individual lawyers. So, whether the Policy obligates Prosight to defend against the imposition of indirect sanctions is entirely irrelevant here.

### D.

Finally, Jones Foster maintains that even assuming no duty to defend its individual lawyers, Rothman and Wilkins, existed pursuant to the Policy, ProSight was required to defend the firm under the Policy's innocent-insured provision. The innocent-insured provision provides that when coverage is lost under the Policy's exclusion clause relating to dishonest or deliberately wrongful conduct, ProSight nevertheless will defend any insured that did not personally commit or participate in committing those wrongful acts. Jones Foster claims that because Third Point's motion was predicated on conduct committed by Rothman and Wilkins, it was an innocent party to the alleged wrongful conduct, and the innocent-insured provision applies as a saving grace to compel a defense of the motion.

Again, Jones Foster is mistaken in its reading of the Policy. For the innocent insured provision to apply, coverage existing under the Policy must have been suspended because of the Policy's exclusion. That is, the application of the provision is predicated first on coverage existing and second on that coverage being lost due to the operation of the Policy's exclusion clause. Neither

17

circumstance exists here. As discussed above, coverage did not exist for the underlying Contempt Motion. Because coverage did not exist, it was not possible for the exclusion to apply, as the exclusion merely stands as a barrier to coverage for claims that otherwise would be covered pursuant to the Policy. Consequently, the innocent-insured provision is inapplicable and does not create a duty to defend Jones Foster.[12]

## IV.

The Policy at issue in this case unambiguously provides that Prosight's duty to defend extends only to claims for compensatory damages, not including sanctions. And, it is equally clear that Jones Foster requested a defense to a Contempt Motion that sought only sanctions and other forms of non-pecuniary relief, all expressly disclaimed by the Policy's plain terms. Thus, Prosight did not breach the terms of the Policy by refusing to defend Jones Foster. We affirm the District Court's order granting with prejudice ProSight Syndicate 1110 at Lloyd's motion to dismiss.

**AFFIRMED.**

---

[12] In any event, as discussed, the underlying Contempt Motion itself does not actually assert any claim against Jones Foster as an entity. Rather, the motion seeks the imposition of sanctions only against the individual Jones Foster attorney's involved in the underlying litigation.