RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0310p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

PAGE PLUS OF ATLANTA, INC. and SNAP
PREPAID, LLC,
       *Plaintiffs-Appellants/Cross-Appellees*,

          *v.*

OWL WIRELESS, LLC,
       *Defendant-Appellee/Cross-Appellant*.

Nos. 12-4551/4565

> Appeal from the United States District Court
> for the Northern District of Ohio at Toledo.
> No. 3:11-cv-02757—Jack Zouhary, District Judge.

Argued: October 8, 2013

Decided and Filed: October 28, 2013

Before: KEITH and SUTTON, Circuit Judges; BLACK, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Stephen M. Dorvee, ARNALL GOLDEN GREGORY LLP, Atlanta, Georgia, for Appellants/Cross-Appellees. Matthew D. Harper, EASTMAN & SMITH LTD., Toledo, Ohio, for Appellee/Cross-Appellant. **ON BRIEF:** Stephen M. Dorvee, Debra G. Buster, ARNALL GOLDEN GREGORY LLP, Atlanta, Georgia, for Appellants/Cross-Appellees. Matthew D. Harper, Henry N. Heuerman, Jeffrey M. Stopar, EASTMAN & SMITH LTD., Toledo, Ohio, for Appellee/Cross-Appellant.

_____

## OPINION

_____

SUTTON, Circuit Judge. Does a party's conditional dismissal of unresolved claims, in which the party reserves the right to reinstate those claims if the case returns

_____

[*] The Honorable Timothy S. Black, United States District Judge for the Southern District of Ohio, sitting by designation.

1

to the district court after an appeal of the resolved claims, create a final order under 28 U.S.C. § 1291?  No.

After Page Plus and SNAP Prepaid sued Owl Wireless for breach of contract, Owl counterclaimed for breach of the same contract.  In a series of orders, the district court granted summary judgment in favor of Owl on the plaintiffs' claims as well as on Owl's counterclaim.  All that remained was a damages trial on Owl's counterclaim.  Instead of proceeding to trial, Owl "elected not to pursue the recovery of damages [on its counterclaim] at th[at] time."  R.132 at 2.  The parties submitted a proposed stipulation of dismissal under Rule 41(a)(2).  Once entered, the order dismissed Owl's claim for damages on its counterclaim with this condition:  "[I]n the event any aspect of the Court's rulings made in this litigation are reversed or modified, whether in whole or in part, by any appellate court, [Owl] shall be, and hereby is, granted leave to reassert . . . its Counterclaim . . . following remand . . . ."  R.132 at 2–3.  The plaintiffs "agree[d] not to assert any defense to such claims based on the passage of time."  *Id.* at 2.  The parties each filed appeals challenging parts of the district court's decision.

Congress sets the jurisdiction of the federal courts.  When it comes to appellate jurisdiction, a party may appeal certain interlocutory decisions relating to injunctions and other discrete matters, *see* 28 U.S.C. § 1292(a), as well as all "final decisions of the district courts."  28 U.S.C. § 1291.  No one claims that the district court entered a decision mentioned in § 1292(a).  That leaves the question whether the district court entered a "final decision[]" under § 1291.  A final decision "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."  *Catlin v. United States*, 324 U.S. 229, 233 (1945).  With exceptions not relevant here, the finality requirement establishes a one-case, one-appeal rule. *See Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994). The rule guards against piecemeal appeals that permit litigants to second-guess the district court at each turn, harming the district court's ability to control the litigation in front of it and consuming finite appellate court resources along the way. *See Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106–07 (2009).

The finality requirement, like most general rules, occasionally produces false alarms, barring appeals where the benefits of an immediate appeal from a non-final order outweigh the costs. That possibility was not lost on the rulemakers or Congress, which created two safety valves for this contingency. Civil Rule 54(b) permits a district court to enter final judgment "as to one or more, but fewer than all, claims or parties" when "there is no just reason for delay." And § 1292(b) permits a district court to certify an order involving a central, controlling question of law for immediate appeal when such an appeal "may materially advance the ultimate termination of the litigation."

Instead of pursuing either of these options, the parties took a third route. They agreed that Owl could dismiss its remaining counterclaim on the condition that the plaintiffs would allow Owl to revive its counterclaim and forgo any time-based affirmative defenses if the case returned to the district court. But does the final-judgment rule of § 1291 permit such an appeal? The parties did not raise the issue with the district court below, and they did not raise it here. We asked for supplemental briefing on the point, *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998), and now conclude that no jurisdiction exists.

A *conditional* dismissal by its nature does not meet the traditional test of finality—a litigation-ending decision that "leaves nothing" for the district court "to do but execute the judgment" on the merits. *Catlin*, 324 U.S. at 233. Instead of guaranteeing an end to the litigation, the order guaranteed that the reserved claim would "spring back to life" if the condition applied—if any of the issues teed up for our consideration by the parties were reversed. *Ruppert v. Principal Life Ins. Co.*, 705 F.3d 839, 842 (8th Cir. 2013). The point of the finality requirement is not to let the parties pause the litigation, appeal, then resume the litigation on a half-abandoned claim if the case returns.

Not only must a final decision leave nothing for the district court to do on the merits, but the finality inquiry should not present the court of appeals with a moving target. An appellate court must be able to determine *at the time of appeal* whether a final, litigation-ending decision has been entered. Yet a conditional dismissal leaves

everyone, including the court of appeals, guessing whether the condition will apply. Should a court of appeals keep the appeal so long as it decides to affirm? Should it dismiss the appeal once it decides to reverse—whether after oral argument or after a draft opinion has been circulated—and it becomes apparent that the district court's decision did not end the litigation on the merits? Should a litigant be able to dismiss the springing claim unreservedly after oral argument when it is possible to get a sense of the appellate court's view of the merits? There are many questions here, and the answers to all of them point to the virtues of a finality inquiry readily ascertainable at the time of appeal. Conditional finality has no such virtue.

All agree, moreover, that appellate jurisdiction would not exist in this case if the parties had filed their appeals as soon as the district court entered its last summary judgment ruling. That is because an unresolved issue, and a substantial one at that, would remain: the damages to which Owl was entitled on its claim. *See Bonner v. Perry*, 564 F.3d 424, 427 (6th Cir. 2009). That scenario and the present appeal are the same in every way but one: The *parties* consented to jurisdiction here. Yet party consent is not a traditional justification for finding subject matter jurisdiction. Quite the opposite. *See People's Bank v. Calhoun*, 102 U.S. 256, 260–61 (1880) ("[T]he mere consent of parties cannot confer upon a court of the United States the jurisdiction to hear and decide a case.").

Conditional finality also produces many of the problems that the final-order doctrine was designed to deter. The finality requirement recognizes that, as parties work through litigation, some issues drop out of the case and others become more important. If parties may manufacture finality through conditional dismissals, they can halt that winnowing effect and force the appellate court to address every perceived mistake of the district court instead of only the issues on which the litigation turns. Appealing in fits and starts diminishes the role of the district court, delays the district court proceedings and wastes appellate court resources. That is why, when a claim may "come back on a second appeal," it is appropriate to conclude that "the decision cannot be considered final." *India Breweries, Inc. v. Miller Brewing Co.*, 612 F.3d 651, 657 (7th Cir. 2010)

(quotation omitted).  Nor is there any reason to assume that conditional finality, if permitted, would stop at two merits appeals.  Nothing about the concept precludes the parties from serially setting up one claim for appellate review at a time.  *See Dannenberg v. Software Toolworks, Inc.*, 16 F.3d 1073, 1076 (9th Cir. 1994).

Failure to respect the finality requirement of § 1291 also slights Civil Rule 54(b) and § 1292(b).  The rulemakers and Congress anticipated the possibility that, on a case-by-case basis, some flexibility may be useful in determining when the parties may appeal.  Yet by "home-brew[ing] their own approach to obtaining appellate review," the parties sidestepped the prerequisites and safeguards built into these two other options. *First Health Grp. Corp. v. BCE Emergis Corp.*, 269 F.3d 800, 801 (7th Cir. 2001). Through each option, the district court may screen a request for an immediate appeal and determine whether the parties' interests in any one case outweigh the general interests underlying the one-case, one-appeal rule.  *Cf. Coopers & Lybrand v. Livesay*, 437 U.S. 463, 474–75 (1978).  Not so here.

That is all well and good.  But what of *Hicks v. NLO, Inc.*, 825 F.2d 118 (6th Cir. 1987)?  Hicks raised a wrongful death claim and a conspiracy claim.  The district court granted summary judgment to the defendants on the conspiracy claim.  By stipulation, Hicks voluntarily dismissed her wrongful death claim without prejudice.  *Id.* at 120.  The defendants moved to dismiss Hicks' appeal, arguing that a dismissal without prejudice does not create a final order.  *Id.*  The court disagreed, holding that the voluntary dismissal without prejudice of all remaining claims created a final order.  *Id.*

*Hicks*, a summary decision, did not explain its rationale, but two come to mind that are relevant here.  One is that a voluntary dismissal comes at a cost.  When voluntarily dismissing a claim, a party assumes the risk that the statute of limitations, any applicable preclusion rules or any other defenses might bar recovery on the claim. And the party loses any leverage that the claim provides in the initial action, all of which makes dim the likelihood that a party will use a voluntary dismissal to manufacture finality in order to file piecemeal appeals.  The other is that a claim voluntarily dismissed

without prejudice must be re-filed in a separate action.  There thus is no risk that the same case will produce multiple appeals raising different issues.

Neither rationale establishes finality here.  The parties agreed that Owl was safe from any time-based affirmative defenses the plaintiffs might have.  And the parties agreed that Owl could revive its counterclaim in the same case, presumably to avoid any res judicata issues presented by the voluntary dismissal of this compulsory counterclaim. The risk-free, conditional dismissal left Owl better off than Hicks:  Owl gave up nothing to obtain the immediate appeal.

What of the district court's apparent acquiescence?  A district court after all may file a Rule 41(a)(2) stipulation of dismissal only if it contains "terms that the court considers proper."  But that requirement ensures the district court will consider any "prejudice the [non-dismissing party] may suffer from a dismissal without prejudice." *Bridgeport Music, Inc. v. Universal-MCA Music Pub., Inc.*, 583 F.3d 948, 953 (6th Cir. 2009).  It does not speak to finality, and indeed the parties never raised the point with the district court.  The district court's views on finality at any rate matter only when expressed through a Rule 54(b) determination, a route that may well remain available to the parties and the district court in this case.

All but one of the other circuits to address this issue have concluded that a conditional dismissal does not meet § 1291's finality requirement.  The Third, Seventh, Eighth and Ninth Circuits treat such dismissals as impermissible "end-runs" around the requirements of § 1291.  *Fed. Home Loan Mortg. Corp. v. Scottsdale Ins. Co.*, 316 F.3d 431, 440 (3d Cir. 2003); *see also India Breweries, Inc.*, 612 F.3d at 657; *Clos v. Corr. Corp. of Am.*, 597 F.3d 925, 928 (8th Cir. 2010); *Dannenberg*, 16 F.3d at 1075–776. Only the Second Circuit disagrees.  *See Purdy v. Zeldes*, 337 F.3d 253, 258 (2d Cir. 2003).  The Second Circuit appears to find the *possibility* of finality sufficient to establish finality.  *See id.* ("Purdy runs the risk that if his appeal is unsuccessful, his malpractice case comes to an end.  We therefore hold that a conditional waiver such as Purdy's creates a final judgment reviewable by this court.").  But, as noted, finality either exists at the time an appellate court decides the appeal or it does not.  *See Horwitz*

*v. Alloy Auto. Co.*, 957 F.2d 1431, 1436 (7th Cir. 1992). *All* cases become final at some point. If the *possibility* of finality alone establishes finality, the word has no meaning, and § 1291 serves little purpose. *Cf. Digital Equip. Corp.*, 511 U.S. at 872 ("[I]f immediate appellate review were available every such time [a district court decision might end the litigation as a practical matter], Congress's final decision rule would end up a pretty puny one.").

For these reasons, we dismiss the parties' appeals for lack of jurisdiction.