RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 22a0143p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

WESCO INSURANCE COMPANY,

          *Plaintiff-Appellee*,

    *v.*

RODERICK LINTON BELFANCE, LLP, et al.,

          *Defendants*,

JASON D. WALLACE; DANIEL R. BACHE,

          *Defendants-Appellants*.

No. 21-3479

───────────────

Appeal from the United States District Court for the Northern District of Ohio at Cleveland.
No. 1:17-cv-01813—Benita Y. Pearson, District Judge.

Argued: January 13, 2022

Decided and Filed: July 1, 2022

Before: COLE, LARSEN, and MURPHY, Circuit Judges.

───────────────

**COUNSEL**

───────────────

**ARGUED:** Peter Pattakos, THE PATTAKOS LAW FIRM LLC, Fairlawn, Ohio, for Appellants. Samuel R. Stalker, COZEN O'CONNOR, Chicago, Illinois, for Appellee. **ON BRIEF:** Peter Pattakos, Rachel Hazelet, THE PATTAKOS LAW FIRM LLC, Fairlawn, Ohio, for Appellants. Samuel R. Stalker, COZEN O'CONNOR, Chicago, Illinois, for Appellee.

───────────────

**OPINION**

───────────────

MURPHY, Circuit Judge. If a court compels a lawyer to pay a defendant's attorney's fees because the lawyer filed a frivolous complaint or litigated a case for an improper purpose,

would the average attorney describe this fees award as a "sanction"?  This case raises that interpretive question.  And we have a large body of legal sources to help answer it: the thousands of judicial decisions available on Westlaw or Lexis.  They reveal that the legal community routinely describes an attorney's fees award as a "sanction" when a court grants it because of abusive litigation tactics.

This fact dooms the request for insurance coverage by the two lawyers who filed this appeal.  These lawyers had brought claims against schools under the Individuals with Disabilities Education Act (IDEA).  After the claims failed, the schools sought their attorney's fees from the lawyers under the IDEA's fee-shifting provision.  The lawyers asked their insurer, Wesco Insurance Company, to pay the fees.  Wesco refused on the ground that the requested attorney's fees fell within the insurance policy's exclusion for "sanctions."  Because the IDEA makes attorney misconduct a prerequisite to a fees award against a party's lawyer, we agree that this policy exclusion applied.  We thus affirm the summary-judgment ruling for Wesco.

I

The IDEA provides federal funds to the states to ensure that students with disabilities receive an appropriate education tailored to their needs.  20 U.S.C. §§ 1400(d)(1)(A), 1411(a)(1).  When parents believe that a school has failed to live up to the Act's expectations, it offers them an administrative process to raise their concerns and, if that process fails, a cause of action to obtain judicial relief.  *Id.* § 1415; *Perez v. Sturgis Pub. Schs.*, 3 F.4th 236, 239 (6th Cir. 2021).  To encourage lawyers to take these cases, the Act gives district courts discretion to award attorney's fees to prevailing parents.  20 U.S.C. § 1415(i)(3)(B)(i)(I).  Sometimes, though, lawyers representing parents pursue baseless claims.  If a court finds a complaint to be, say, "frivolous" or "presented for any improper purpose," the Act allows the court to compel the lawyers who filed it to pay a school's attorney's fees.  *Id.* § 1415(i)(3)(B)(i)(II)–(III).

This case stems from four IDEA claims pursued by three attorneys with Roderick Linton Belfance, LLP: Jason Wallace, Daniel Bache, and Kristopher Immel.  (Immel litigated only one of the claims.)  These attorneys alleged that four School Districts in northern Ohio—Akron, Solon, Nordonia Hills, and Cleveland Heights—failed to provide their student clients with an

appropriate education.  After significant administrative litigation, a hearing officer found for the School District in each proceeding.  Wallace and Bache pursued the claim against the Akron School District in court.  *See Barney v. Akron Bd. of Educ.*, 763 F. App'x 528, 532 (6th Cir. 2019).  A district court ruled for Akron, and we affirmed.  *See id.* at 532–34.

Frustrated with having to defend against what they viewed to be frivolous litigation, the School Districts sued Wallace, Bache, Immel, and the Roderick firm under the IDEA's fee-shifting provisions.  The School Districts alleged that, during the administrative process, the Roderick attorneys presented sloppy pleadings, asserted factually inaccurate or legally irrelevant allegations, and needlessly prolonged the proceedings.  To list two examples, the Akron School District noted that Wallace and Bache filed an administrative complaint that misstated the most basic of facts, including the student's address, school, and mother's name—errors that "profoundly disturbed" the hearing officer.  Akron Compl., R.51-2, PageID 1137.  Likewise, the Nordonia Hills City School District noted that Wallace and Bache claimed that their parent client had requested an IDEA evaluation of her child when he was in the eighth grade—a false allegation that forced the district to waste resources interviewing the child's eighth-grade teachers.

Wesco had issued a professional-liability policy to Roderick and its attorneys covering the time period of the IDEA proceedings.  (Technically, Wesco had issued two polices to the firm over this period.  But neither party suggests that these policies had any material differences, so we will cite only one for simplicity.)  The Roderick firm and its three attorneys (Wallace, Bache, and Immel) asked Wesco to provide a defense against the School Districts' suits and to indemnify them for any liability.  Wesco responded that it had no duty to defend or indemnify Roderick in connection with these claims.  Under the policy, Wesco agreed to defend Roderick against certain "claim[s]" for "damages" arising from their legal services and to indemnify them for any awarded "damages."  Ins. Pol'y, R.1-7, PageID 151.  Yet the policy defined "damages" to exclude an award of "sanctions" under "federal" law.  *Id.*, PageID 153.  Wesco asserted that this exclusion captured the School Districts' requests for attorney's fees under the IDEA.

Recognizing that Roderick and its attorneys would disagree, Wesco preemptively sued them and the School Districts seeking a declaratory judgment that its policy did not apply.  The

district court granted summary judgment to Wesco, agreeing that an attorney's fees award for the School Districts under the IDEA qualified as a "sanction" within the coverage exclusion. *See Wesco Ins. Co. v. Roderick Linton Belfance LLP*, 2018 WL 4510093, at \*1, \*5–6 (N.D. Ohio Sept. 19, 2018). Wallace and Bache—but not Immel, the Roderick firm, or the School Districts—appealed. We review the district court's decision de novo. *See Goodyear Tire & Rubber Co. v. Nat'l Union Fire Ins. Co. of Pitt.*, 694 F.3d 781, 782 (6th Cir. 2012).

Apart from this case, another insurer filed a similar suit against Wallace and Bache. During the course of the IDEA proceedings against the School Districts, these attorneys left Roderick to start their own firm. Wesco did not insure this new firm. So Wallace and Bache sought coverage from their new insurer for their conduct during the IDEA proceedings after they departed Roderick. This other insurer also denied coverage. A state appellate court recently upheld its decision. *See Ohio Bar Liab. Ins. Co. v. Wallace*, 183 N.E.3d 638, 648 (Ohio Ct. App. 2022).

II

Before reaching the merits, we must ensure ourselves of our appellate jurisdiction even though neither party noticed a potential jurisdictional problem. *See Bd. of Trs. of Plumbers, Pipe Fitters & Mech. Equip. Serv., Loc. Union No. 392 v. Humbert*, 884 F.3d 624, 625 (6th Cir. 2018). Except in a few inapplicable situations, Congress has given circuit courts jurisdiction only over "final decisions" of district courts. 28 U.S.C. § 1291; *cf. id.* § 1292(a)–(b); Fed. R. Civ. P. 54(b); *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949).

Is there a "final decision" here? A flurry of counterclaims and crossclaims complicates the picture. Back in September 2018, the district court granted summary judgment to Wesco on the basic coverage question at issue on appeal. But the court did not grant an ostensibly final judgment until nearly three years later. In the meantime, the parties litigated these other claims. After Wesco sued, the Roderick firm and Immel brought counterclaims against the insurer for breach of contract. Wallace and Bache filed separate counterclaims against Wesco for breach of contract, bad-faith denial of coverage, and intentional infliction of emotional distress. Wallace and Bache also brought a crossclaim against the Roderick firm (which they had since left) for

breach of contract.   Roderick responded with crossclaims against Wallace and Bache for indemnification or contribution.

The district court gradually dismissed all of these remaining claims.   Its summary-judgment ruling in favor of Wesco on the insurer's claims appeared to resolve the counterclaims against it.   *Wesco*, 2018 WL 4510093, at *6.  So the parties filed a joint motion asking the court to clarify that its order effectively granted judgment on these claims.   The court agreed, dismissing them with prejudice.  *See Wesco Ins. Co. v. Roderick Linton Belfance LLP*, 2018 WL 10809985, at *1 (N.D. Ohio Oct. 16, 2018).   That dismissal left Wallace and Bache's and the Roderick firm's crossclaims against each other.   These parties asked the court to dismiss the crossclaims without prejudice so that they could immediately appeal the court's summary-judgment ruling in Wesco's favor.   The court denied this request.   It reasoned that these parties could not "manufacture a 'final judgment' but reserve the right to pursue their claims against each other in later litigation." *Id.*

With the crossclaims still pending, Wallace filed for bankruptcy.   The court stayed the proceedings for his bankruptcy case.   Wallace's discharge from bankruptcy extinguished the crossclaims between him and the Roderick firm with prejudice.   That resolution left only Bache's and Roderick's crossclaims against each other.   These defendants jointly moved to dismiss these crossclaims.   This time, the district court found it "proper to dismiss" them under Federal Rule of Civil Procedure 41(a)(2) and (c).  Ord., R.101, PageID 1880.

At first glance, its decision looks final.   The Supreme Court has said that a "final decision" generally "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Hall v. Hall*, 138 S. Ct. 1118, 1123–24 (2018) (citation omitted).   And here, the district court granted summary judgment to Wesco, dismissed all of the counterclaims against it with prejudice, and dismissed the crossclaims between Bache and Roderick that had not been extinguished in bankruptcy.  So there is nothing left.  The problem?  The court did not specify whether it dismissed the remaining crossclaims between Bache and Roderick with prejudice (that is, without the ability to refile them).  By default, then, the Federal Rules of Civil Procedure would make the dismissal *without prejudice*, suggesting that these parties could reassert these claims against each other down the road.  Fed. R. Civ. P. 41(a)(2).

This fact triggers a concern over whether a "final decision" exists under 28 U.S.C. § 1291. The final-decision requirement rests on the notion that parties can resolve a case more efficiently by saving up all issues for one appeal at the end. *See Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 1712 (2017). What may seem like a critical issue at a case's early stages (perhaps a hypothetical plaintiff believes that the district court misread an important statute when granting summary judgment to the defendant on a claim) may turn out to be unnecessary to decide by the end (perhaps because the jury gave the plaintiff complete relief on the remaining claims). *See Page Plus of Atlanta, Inc. v. Owl Wireless, LLC*, 733 F.3d 658, 661 (6th Cir. 2013). But parties could frustrate these efficiency goals if they could "manufacture finality" through without-prejudice dismissals of the remaining claims. *Id.* Suppose the hypothetical plaintiff, instead of proceeding to trial on those claims, simply dismissed them without prejudice in order to appeal the summary-judgment ruling on the claim that the plaintiff lost. If the plaintiff could reinstate (and proceed to trial on) the dismissed claims after the appellate court's ruling, parties could take interlocutory appeals at their leisure through pleadings gamesmanship. *See Rowland v. S. Health Partners, Inc.*, 4 F.4th 422, 428 (6th Cir. 2021). Courts have not looked fondly on this tactic. *See id.* at 429 (citing cases).

So when does a without-prejudice dismissal of remaining claims create a "final decision" that permits an appeal of the district court's earlier authoritative resolution of others? Some judges have called the legal landscape on this question an "egregious mess" because of the subtle nuances (and potential conflicts) in the decisions of the circuit courts. *Corley v. Long-Lewis, Inc.*, 965 F.3d 1222, 1236 (11th Cir. 2020) (Pryor, C.J., concurring) (quoting *Williams v. Seidenbach*, 958 F.3d 341, 355 (5th Cir. 2020) (en banc) (Willett, J., concurring in the judgment)).

The same nuances exist in our precedent. Twice in recent years, we have held that a district court's without-prejudice dismissal of remaining claims did not create a "final decision" that allowed an appeal of claims that the court resolved earlier at the summary-judgment stage. *See Rowland*, 4 F.4th at 425–30; *Page Plus*, 733 F.3d at 659–62; *cf. Novia Commc'ns, LLC v. Weatherby*, 798 F. App'x 890, 892 (6th Cir. 2020) (citing *Dearth v. Mukasey*, 516 F.3d 413, 416 (6th Cir. 2008)). In *Page Plus*, a district court granted summary judgment to the defendant on

the plaintiff's claims and on the defendant's counterclaim.  733 F.3d at 659.  Once the court set the victorious counterclaim for a damages trial, the parties moved to dismiss it under Federal Rule of Civil Procedure 41(a)(2) (and presumably Rule 41(c), which governs counterclaims).  *Id.* But this order attached conditions on the dismissal, including that the defendant could resuscitate the counterclaim if we reversed the summary-judgment order and that the plaintiff could not raise a timeliness objection to that course of action.  *Id.*  This "*conditional* dismissal," we held, was not a "final" appealable decision under § 1291.  *Id.* at 660.

We extended *Page Plus*'s logic in *Rowland*—a case in which the dismissal order was not *expressly* conditional.  There, a plaintiff asserted federal constitutional claims and state-law claims against several defendants.  4 F.4th at 424.  The district court granted summary judgment on the federal claims and on most of the state-law claims, but it allowed some state-law claims to proceed to trial.  *Id.*  Rather than take the trial route, the parties persuaded the court to dismiss the pending state-law claims without prejudice (presumably under Rule 41(a)(2)) so that the plaintiff could immediately appeal the rejection of her federal claims.  *Id.*  We held that we lacked appellate jurisdiction because the without-prejudice dismissal of the remaining state-law claims did not create a "final decision" under § 1291.  *Id.* at 425–30.  (Courts have also disagreed over the legality of the type of voluntary dismissal at issue in *Rowland*.  *See* 9 Charles A. Wright et al., *Federal Practice and Procedure* § 2362, at 475–80 (4th ed. 2020).  Unlike *Page Plus*, *Rowland* involved the dismissal of a plaintiff's remaining claims (under Rule 41(a)), not the dismissal of a remaining counterclaim (under Rule 41(c)).  Some courts have held that Rule 41(a) cannot be used to dismiss a plaintiff's individual *claims*; rather, it might be read (as one of our cases has read it) to permit the dismissal of only the plaintiff's entire *action*.  Fed. R. Civ. P. 41(a); *see Philip Carey Mfg. Co. v. Taylor*, 286 F.2d 782, 785–86 (6th Cir. 1961); *cf. Williams*, 958 F.3d at 345; *United States ex rel. Doe v. Preferred Care, Inc.*, 326 F.R.D. 462, 464 (E.D. Ky. 2018).)

Both *Page Plus* and *Rowland*, though, had to distinguish *Hicks v. NLO, Inc.*, 825 F.2d 118 (6th Cir. 1987) (per curiam).  There, the district court dismissed all but one of the plaintiff's state-law claims.  *Id.* at 120.  The plaintiff then voluntarily dismissed the remaining claim without prejudice (presumably under Rule 41(a)(2)).  *Id.*  *Hicks* held that we had jurisdiction

over an appeal of claims rejected on summary judgment if a plaintiff voluntarily dismisses the remaining claims. *Id.* *Page Plus* distinguished *Hicks* on the ground that it did not involve a *conditional* dismissal order that allowed the plaintiff to reinvoke the dismissed claim if we reversed. 733 F.3d at 661–62. Rather, the plaintiff in *Hicks* assumed the risk that the statute of limitations might run on the dismissed claim, and the plaintiff would have to refile it in a separate suit. *Id.* at 661. *Rowland* applied the same distinctions even though its dismissal order did not contain *Page Plus*'s conditional language, reasoning that the parties contemplated that the dismissed claims would "be reinstated" if we reversed (and, in fact, the plaintiff requested that relief on appeal). 4 F.4th at 426.

Apart from *Hicks*, we also must distinguish *Rowland* and *Page Plus* from our cases that allow parties to disavow claims on appeal even though they did not properly dismiss them in the district court. *See Rutherford v. Columbia Gas*, 575 F.3d 616, 618 (6th Cir. 2009); *G.G. Marck & Assocs., Inc. v. Peng*, 309 F. App'x 928, 931–32 (6th Cir. 2009); *Scarbrough v. Perez*, 870 F.2d 1079, 1081–82 (6th Cir. 1989). In *Rutherford*, for example, the plaintiff appealed the district court's dismissal of her claims notwithstanding that the defendant's counterclaims remained pending. *See* 575 F.3d at 618. When confronted with this problem on appeal, the defendant abandoned its counterclaims with prejudice to ensure our jurisdiction. *Id.* This approach comports with an appellate court's general ability to modify a district court's judgment on appeal. *See Perna v. Health One Credit Union*, 983 F.3d 258, 273–74 (6th Cir. 2020); 28 U.S.C. § 2106. It also comports with the caselaw in several other circuit courts, which have likewise relied on oral-argument disclaimers as a basis to exercise appellate jurisdiction. *See India Breweries, Inc. v. Miller Brewing Co.*, 612 F.3d 651, 657–58 (7th Cir. 2010); *see also Palakovic v. Wetzel*, 854 F.3d 209, 219 & n.11 (3d Cir. 2017); *Romoland Sch. Dist. v. Inland Empire Energy Ctr., LLC*, 548 F.3d 738, 748–51 (9th Cir. 2008); *cf. Alix v. McKinsey & Co.*, 23 F.4th 196, 203 (2d Cir. 2022).

More generally, we must distinguish *Rowland* and *Page Plus* from the many decisions that permit appeals of without-prejudice dismissals outside Rule 41's voluntary-dismissal context. A dismissal for lack of subject-matter jurisdiction, for example, is without prejudice to the plaintiff reraising the dismissed claims in a court with jurisdiction. *See Zayed v. United*

*States*, 368 F.3d 902, 904–05 (6th Cir. 2004).  Yet courts permit appeals of dismissals on these jurisdictional grounds.  *See id.*; *see also Carter v. Buesgen*, 10 F.4th 715, 720–21 (7th Cir. 2021).  Likewise, district courts often dismiss federal claims, refuse to exercise supplemental jurisdiction over any remaining state-law claims, and dismiss those claims without prejudice to a plaintiff refiling them in state court.  *See Gambrel v. Knox County*, 25 F.4th 391, 412 (6th Cir. 2022); 28 U.S.C. § 1367(c)(3).  We regularly hear appeals from these types of orders notwithstanding the without-prejudice dismissal of the state-law claims.  *See Gambrel*, 25 F.4th at 412 (citing cases).

So how does this divergent caselaw affect our jurisdiction?  Two factors in this fact-bound area convince us that the dismissal of Bache's and Roderick's crossclaims created a "final decision" under § 1291.  As for the first factor, Bache's counsel clarified at oral argument that Bache intended to dismiss his crossclaims against Roderick with prejudice despite the dismissal order's failure to say so.  Bache's admission makes his claims like those in *Rutherford* and *Scarbrough*—cases in which we exercised appellate jurisdiction because of similar appellate disclaimers.  *See Rutherford*, 575 F.3d at 618; *Scarbrough*, 870 F.2d at 1081–82.  And his admission distinguishes Bache from the litigants in *Rowland* and *Page Plus*, both of whom sought to keep alive on appeal the claims that they had voluntarily dismissed in an attempt to create appellate jurisdiction.  *See Rowland*, 4 F.4th at 425–26; *Page Plus*, 733 F.3d at 660.

As for the second factor, the Roderick firm did not appeal.  Roderick's participation in this suit has thus come to an end.  Even if we agreed with Wallace and Bache's (and Roderick's) reading of Wesco's policy, Roderick could not reinstate its claims against Wesco on remand.  *See Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399–401, 399 n.4 (1981); *FCA US, LLC v. Spitzer Autoworld Akron, LLC*, 887 F.3d 278, 286–87 (6th Cir. 2018); *Loc. 322, Allied Indus. Workers of Am. v. Johnson Controls, Inc., Globe Battery Div.*, 969 F.2d 290, 291–93 (7th Cir. 1992).  Unlike the parties in *Rowland* and *Page Plus*, then, Roderick did not dismiss its crossclaims so that it could immediately appeal those claims.  *See Rowland*, 4 F.4th at 425; *Page Plus*, 733 F.3d at 659–60.  The claims are finished.  And even if Roderick's crossclaims against Bache were dismissed without prejudice, the firm could not reraise them in federal court.  Diversity jurisdiction would not exist.  So just as when a district court rejects federal claims and denies supplemental jurisdiction over state-law claims, the federal judicial system is done with

Roderick's crossclaims. *See Gambrel*, 25 F.4th at 412. In the (unlikely) event there is another step on these crossclaims, it "must occur elsewhere." *Carter*, 10 F.4th at 724 (Easterbrook, J., concurring).

Although we have appellate jurisdiction, we reiterate (again) that we do not "encourage" this approach to obtaining a final judgment. *Rutherford*, 575 F.3d at 618. If parties have no intent to litigate any remaining claims further, they should be mindful to obtain a clear with-prejudice judgment on those claims in the district court. *See Rowland*, 4 F.4th at 429.

III

Satisfied with our jurisdiction, we turn to the merits of whether Wesco's policy covered the School Districts' suits against Roderick, Wallace, Bache, and Immel. (We will refer to the firm and the attorneys as "Wallace and Bache" from here on because only those defendants appealed and because the distinctions between the defendants no longer matter.) The parties agree that Ohio law governs our interpretation of this policy, so we may assume that it applies. *See Masco Corp. v. Wojcik*, 795 F. App'x 424, 427 (6th Cir. 2019).

A

Wesco's policy obliged it to undertake two well-known insurance duties: the duty to defend and the duty to indemnify. Ins. Pol'y, R.1-7, PageID 151; *see Ward v. United Foundries, Inc.*, 951 N.E.2d 770, 773 (Ohio 2011); 14 Steven Plitt et al., *Couch on Insurance* § 200:3 (3d ed.), Westlaw (database updated June 2022). The policy triggered these duties when a plaintiff sought or obtained "damages" from Wallace and Bache because of their legal services. Wesco's duty to defend Wallace and Bache in a lawsuit arose for "any claim against [them] seeking *damages* which are payable under the terms of this Policy even if any of the allegations of the claim are groundless, false or fraudulent." Ins. Pol'y, R.1-7, PageID 151 (emphasis added). Its duty to indemnify Wallace and Bache for a judgment in such a suit arose for "sums . . . that [they] shall become legally obligated to pay as *damages* because of a claim[.]" *Id.* (emphasis added).

The policy's definition of "damages" includes a general coverage provision along with six exceptions. *Id.*, PageID 152–53. It generally defines "damages" to cover "judgements, awards and settlement if negotiated with the assistance and approval of [Wesco]." *Id.*, PageID 152. It then says that the word "damages" does not cover, among other things, "civil or criminal fines, sanctions, penalties or forfeitures, whether pursuant to federal, state or local law, statute, regulation or court rule and injuries that are a consequence of any of the foregoing[.]" *Id.*, PageID 153. The parties' disagreement boils down to whether the attorney's fees and costs that the School Districts requested under the IDEA qualify as "sanctions" within the meaning of this exception. If so, Wesco had no duty to defend or indemnify Wallace and Bache in the School Districts' suits.

The policy does not define the key word: "sanctions." To decide what this term means, we start with the ground rules under Ohio law. Ohio follows the same interpretive principles for insurance policies that it does for other contracts. *See Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256, 1261 (Ohio 2003). Because Wesco's policy does not include a definition of "sanctions," we should read the term to have the meaning that the average policyholder would give it. *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 652 N.E.2d 684, 686 (Ohio 1995). And if this term has one unambiguous meaning, we must adopt that meaning without resorting to outside-the-contract evidence. *See id.*; *Galatis*, 797 N.E.2d at 1261. But if a policyholder could reasonably interpret "sanctions" in different ways, we must choose the meaning that favors the insured (Wallace and Bache) over the insurer that drafted the policy (Wesco). *Galatis*, 797 N.E.2d at 1262.

The parties do not really dispute that the word "sanctions" has one clear meaning under these rules. *Compare* Appellee's Br. 14, *with* Reply Br. 4, 6. We must interpret this word in light of its context—an insurance policy for legal malpractice. *See Wilkerson v. Am. Fam. Ins. Co.*, 997 F.3d 666, 669 (6th Cir. 2021). And the average lawyer would describe a legal "sanction" as a "penalty or coercive measure that results from failure to comply with a law, rule, or order[.]" *Black's Law Dictionary* 1608 (11th ed. 2019); *see The American Heritage Dictionary of the English Language* 1551 (5th ed. 2018); *Merriam-Webster's Dictionary of Law* 437 (2016).

Instead of disputing the *meaning* of "sanctions," the parties disagree on the *application* of this definition to this case's facts: Would the attorney's fees award qualify as a "coercive measure" for failing to comply with a "law"? Our answer requires some background on attorney's fees. Since the founding, the so-called "American Rule" has generally required parties to pay their own attorney's fees in a lawsuit—whether or not they ultimately win or lose the suit. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247–50 (1975) (citing *Arcambel v. Wiseman*, 3 U.S. 306 (1796)). Plaintiffs, for example, generally cannot claim their attorney's fees as part of the "damages" caused by a defendant's misconduct. *See Summit Valley Indus. Inc. v. Loc. 112, United Brotherhood of Carpenters & Joiners of Am.*, 456 U.S. 717, 722–23 (1982).

But the American Rule has always come with exceptions that we can group into two general buckets. *Cf. Cook v. Greenleaf Township*, 861 F. App'x 31, 34 (6th Cir. 2021). In the first bucket, some sources permit parties to obtain their attorney's fees at the end of a suit *merely* for success in the litigation. *See Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 253–54 (2010). Many statutes, for example, award fees to the "prevailing party." *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 602–03 (2001). The U.S. Supreme Court has interpreted this phrase generally to require courts to award attorney's fees to a winning *plaintiff* in a discrimination case under Title VII or a constitutional case under 42 U.S.C. § 1983. *See* 42 U.S.C. §§ 1988(b), 2000e-5(k); *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 416–17 (1978). Likewise, many contracts depart from the American Rule by including terms that allow the winning party in a breach-of-contract suit to seek attorney's fees. *See Nottingdale Homeowners' Ass'n v. Darby*, 514 N.E.2d 702, 704–05 (Ohio 1987).

In the second bucket, some sources permit one party to obtain attorney's fees if the other party (or that party's attorney) has engaged in litigation misconduct. Take Federal Rule of Civil Procedure 11. It permits a district court to compel a party or attorney to pay "part or all of the" other side's "reasonable attorney's fees" if the party or attorney presented a frivolous claim, asserted an unreasonable factual contention, or brought a suit for an "improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation[.]" Fed. R. Civ. P. 11(b), (c); *see also* 28 U.S.C. § 1927. Or take the judiciary's inherent powers. They allow a

court to order a party to pay attorney's fees if the party engages in conduct that abuses the judicial system—say, by concealing documents or disobeying court orders. *See Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1184, 1186 (2017); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 55–57 (1991). Lastly take an attorney's fees award to a prevailing *defendant* in a suit under Title VII or § 1983. Unlike prevailing plaintiffs, defendants may obtain attorney's fees awards only if they show that a suit "was frivolous, unreasonable, or without foundation." *James v. City of Boise*, 577 U.S. 306, 306 (2016) (per curiam) (citation omitted); *see Christiansburg*, 434 U.S. at 421.

How would the average lawyer characterize these two different buckets of attorney's fees? It is unlikely that such a lawyer would describe an award in the first bucket (tied to the success in a lawsuit alone) as a "sanction." But a fees award in the second bucket (tied to litigation misconduct) fits the definition of "sanction" to a tee. The award is a "coercive measure" in the sense that a court compels a party or attorney to pay it. *Black's Law Dictionary*, *supra*, at 1608. And the court takes this measure because of the attorney's or litigant's "failure to comply" with a law or court rule against abusive litigation tactics. *Id.*

But do not take our word for it. There perhaps can be no better "corpus" for determining what legal terms like "attorney's fees" or "sanction" mean than the large body of judicial decisions that use those words. *Cf. Fulkerson v. Unum Life Ins. Co. of Am.*, 36 F.4th 678, 2022 WL 1829128, at *3 (6th Cir. June 3, 2022); James C. Phillips et al., *Corpus Linguistics & Original Public Meaning: A New Tool to Make Originalism More Empirical*, 126 Yale L.J.F. 20, 28 (2016). And a basic Westlaw or Lexis search reveals thousands of decisions that use the word "sanction" to describe an award of attorney's fees for violations of laws or court rules.

A few examples illustrate the point. When discussing the judiciary's inherent power to deter misconduct, the U.S. Supreme Court has repeatedly described a fees award as a "permissible sanction" for abusive tactics. *Goodyear*, 137 S. Ct. at 1186; *see Chambers*, 501 U.S. at 45–46. Likewise, the Court has describe Rule 11 as establishing a "sanction regime[]" for litigation misconduct. *Goodyear*, 137 S. Ct. at 1186 n.5; *see also Jones, Foster, Johnston & Stubbs, P.A. v. ProSight-Syndicate 1110 at Lloyd's*, 680 F. App'x 793, 798 (11th Cir. 2017) (per curiam). And courts have routinely said that a district court imposes a "sanction"

when it awards attorney's fees to a prevailing defendant for a frivolous suit under Title VII or § 1983. *Lowery v. Jefferson Cnty. Bd. of Educ.*, 586 F.3d 427, 437 (6th Cir. 2009) (quoting *Jones v. Cont'l Corp.*, 789 F.2d 1225, 1232 (6th Cir. 1986)); *see also, e.g.*, *Royal Oak Ent., L.L.C. v. City of Royal Oak*, 316 F. App'x 482, 487 (6th Cir. 2009); *Bacon v. Am. Fed'n of State, Cnty., & Mun. Emps. Council, No. 13*, 795 F.2d 33, 34 (7th Cir. 1986). Ohio courts have likewise called an attorney's fees award a "sanction" when granted under Ohio statutes or rules that prohibit "frivolous conduct." *Lansky v. Brownlee*, 111 N.E.3d 135, 139 (Ohio Ct. App. 2018) (citation omitted); *Siemientkowski v. State Auto. Mut. Ins. Co.*, 2006 WL 2299358, at *1–2 (Ohio Ct. App. Aug. 10, 2006).

This attorney's fees dichotomy requires us to identify the general "bucket" in which an attorney's fees award under the IDEA would fall. The relevant IDEA provision allows district courts to grant both kinds of attorney's fees:

> In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs—
>
> (I) to a prevailing party who is the parent of a child with a disability;
>
> (II) to a prevailing party who is a State educational agency or local educational agency against the attorney of a parent who files a complaint or subsequent cause of action that is frivolous, unreasonable, or without foundation, or against the attorney of a parent who continued to litigate after the litigation clearly became frivolous, unreasonable, or without foundation; or
>
> (III) to a prevailing State educational agency or local educational agency against the attorney of a parent, or against the parent, if the parent's complaint or subsequent cause of action was presented for any improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation.

20 U.S.C. § 1415(i)(3)(B)(i). The initial subclause falls within the first bucket of fees because it allows parents to obtain their fees *merely* for prevailing. *Id.* § 1415(i)(3)(B)(i)(I). But the next two subclauses fall within the second one. They permit schools to obtain their attorney's fees only if the relevant parent or attorney litigated a suit that was "frivolous, unreasonable, or without foundation" or "presented for any improper purpose[.]" *Id.* § 1415(i)(3)(B)(i)(II)–(III).

Critically, moreover, the School Districts in this case could seek their fees only under these latter two subclauses. These entities thus had to show that Wallace and Bache violated

their duties not to file complaints that were "frivolous" or for an "improper purpose." *Id.* This misconduct element makes clear that any awarded fees would constitute a "sanction" under the ordinary meaning of that term (and so under Wesco's policy). *See Guman*, 652 N.E.2d at 686. The award would be a "coercive measure" against Wallace and Bache for their "failure to comply" with the IDEA's prohibition on abusive litigation conduct. *Black's Law Dictionary*, *supra*, at 1608.

This conclusion is confirmed by a comparison of these two IDEA subclauses with other laws or rules that courts routinely describe as imposing "sanctions." *See R.P. ex rel. C.P. v. Prescott Unified Sch. Dist.*, 631 F.3d 1117, 1124–25 (9th Cir. 2011). The IDEA subclause that allows schools to seek fees for claims that are "frivolous, unreasonable, or without foundation" mirrors the standard that the Supreme Court adopted for allowing prevailing defendants to seek fees under Title VII or § 1983. *Compare* 20 U.S.C. § 1415(i)(3)(B)(i)(II), *with Christiansburg*, 434 U.S. at 421; *see R.P.*, 631 F.3d at 1124–25. And the IDEA subclause that allows schools to seek fees for claims that are "presented for any improper purpose" mirrors a similar provision in Rule 11. *Compare* 20 U.S.C. § 1415(i)(3)(B)(i)(III), *with* Fed. R. Civ. P. 11(b); *see R.P.*, 631 F.3d at 1125. Because courts ordinarily describe fees under these other provisions as "sanctions," an ordinary lawyer would likewise describe a fees award under these IDEA subclauses as "sanctions." The School Districts' suits thus fell within the "sanctions" exception in Wesco's policy.

B

Wallace and Bache's arguments do not change things. *First*, they suggest that a "sanction" must be *punitive* and that an attorney's fees award is *compensatory* because it reimburses the other litigant for the harm caused by the abusive litigation. Yet a court can naturally describe a monetary award as a "sanction" even if it serves a "compensatory purpose." *Jones*, 680 F. App'x at 799. Indeed, the Supreme Court has held that a "sanction" imposed under a court's inherent powers can *only* be "compensatory," never "punitive." *Goodyear*, 137 S. Ct. at 1186; *Chambers*, 501 U.S. at 53–54. Its usage shows that a "compensatory sanction" is not an oxymoron and that a fees award can qualify as a "sanction" under an ordinary understanding of the word. The "sanction" status of a monetary award instead turns on a court's

*reasons* for granting it. Whether compensatory or punitive, a sanction is imposed for a "failure to comply" with a legal duty. *Black's Law Dictionary*, *supra*, at 1608; *cf. Godin & Baity, LLC v. Markel Ins. Co.*, 2020 WL 5076764, at *6 & n.6 (D. Colo. Aug. 27, 2020); *Dixon v. Home Indem. Co.*, 426 S.E.2d 381, 382 (Ga. Ct. App. 1992). And the IDEA grants an award of attorney's fees to schools only if an attorney fails to comply with the duty not to file complaints that are frivolous or for an improper purpose. The fees award thus serves as a "sanction" for that sort of conduct.

*Second*, Wallace and Bache point out that the IDEA's text says that a court may award the attorney's fees "as part of the costs"—not as a "sanction." 20 U.S.C. § 1415(i)(3)(B)(i). Because the IDEA does not *expressly* describe these awards as sanctions, this argument goes, they cannot qualify as "sanctions" under Wesco's policy. But courts have used the word "sanction" to describe fees awarded under other provisions that do not use that term. The statute permitting defendants in § 1983 cases to obtain attorney's fees for frivolous suits also describes the fees "as part of the costs[.]" 42 U.S.C. § 1988(b). But that has not stopped our court from calling this type of attorney's fees award an "extreme sanction" on dozens of occasions. *Lowery*, 586 F.3d at 437 (citation omitted); *see also, e.g.*, *Kidis v. Reid*, 976 F.3d 708, 722 (6th Cir. 2020); *Green v. City of Southfield*, 764 F. App'x 548, 548 (6th Cir. 2019); *Tahfs v. Proctor*, 316 F.3d 584, 596 (6th Cir. 2003). Likewise, Federal Rule of Appellate Procedure 38 allows an appellate court to award, among other things, "single or double costs" to an appellee if it finds an appeal to be "frivolous." Fed. R. App. P. 38. We routinely characterize these awards as sanctions too. *See Larry E. Parrish, P.C. v. Bennett*, 989 F.3d 452, 457–58 (6th Cir. 2021); *Seifert v. Graphic Packaging Int'l, Inc.*, 486 F. App'x 594, 595 (6th Cir. 2012) (per curiam). In short, whether a fees award falls within the ordinary meaning of the word "sanction" turns on substance, not labels.

In making this "costs" argument, Wallace and Bache rely primarily on *Sylvania Township Board of Trustees v. Twin City Fire Insurance Co.*, 2004 WL 226115 (Ohio Ct. App. Feb. 6, 2004). In that case, government defendants were ordered to pay the plaintiffs' attorney's fees in a suit under Ohio's public-records and open-meetings laws. *See id.* at *1. These defendants asked their insurer to reimburse them for this fees award. *See id.* The court held that

the insurance policy covered the award because it was part of the costs and did not fall within a policy exclusion for "fines" or "penalties." *Id.* at \*5–6. Yet the policy in *Sylvania Township* did not even use the word "sanctions." *See id.* at \*2. And the statutes authorizing these fees allowed a court to grant them for a plaintiff's successful suit—without more. *See* Ohio Rev. Code §§ 121.22(I)(2)(a), 149.43(C)(3). These statutes are more like the attorney's fees provision for prevailing *parents* under the IDEA (which can be granted based on success alone) than the provisions for prevailing schools (which require a showing of misconduct). *Sylvania Township* thus supports our decision.

*Third*, Wallace and Bache rely on an analogy to a different policy exclusion. In addition to excluding "sanctions" from the definition of covered "damages," Wesco's policy also excludes "punitive or exemplary amounts[.]" Ins. Pol'y, R.1-7, PageID 153. The Ohio Supreme Court has held, moreover, that an attorney's fees award does not fall within an insurance policy's exclusion for punitive damages. *Neal-Pettit v. Lahman*, 928 N.E.2d 421, 424–25 (Ohio 2010). *Neal-Pettit* involved a car accident caused by a drunk driver. *Id.* at 422. In a suit against the drunk driver, a jury awarded the victim punitive damages and attorney's fees under the common law (which allowed recovery of both for certain torts). *Id.* The court found that the fees award did not fall within the policy's exclusion for punitive damages because the two were "conceptually distinct." *Id.* at 425. Wallace and Bache argue that attorney's fees are also "distinct" from "sanctions." But their analogy falls apart when one considers the reason why the Ohio Supreme Court found attorney's fees to be distinct from punitive damages. It explained that the fees award sought to compensate the tort victim, not to punish the tortfeasor. *Id.* at 423–24. This distinction between punitive and compensatory purposes might matter for a "punitive damages" exclusion. *See id.* at 425. But it does not matter for the "sanction" exclusion that Wesco invoked in this case. As noted, an attorney's fees award can be naturally described as a "sanction" even if it serves a compensatory purpose. *See Jones*, 680 F. App'x at 799.

*Fourth*, Wallace and Bache retreat to well-established insurance principles. They point out that an insurer's duty to defend (against a lawsuit) is broader than its duty to indemnify (for a judgment). *See Ward*, 951 N.E.2d at 773; *Eighth Floor Promotions, L.L.C. v. Cincinnati Ins. Cos.*, 71 N.E.3d 1262, 1272 (Ohio Ct. App. 2016). A complaint's allegations trigger the duty to

defend so long as they "potentially or arguably" fall within the scope of coverage. *City of Willoughby Hills v. Cincinnati Ins. Co.*, 459 N.E.2d 555, 558 (Ohio 1984); *see also, e.g.*, *Cincinnati Ins. Co. v. Anders*, 789 N.E.2d 1094, 1097 (Ohio 2003); *Sanderson v. Ohio Edison Co.*, 635 N.E.2d 19, 23 (Ohio 1994). And here, Wallace and Bache claim that the School Districts' requested attorney's fees at least "arguably" do not qualify as "sanctions."

They misunderstand the Ohio caselaw on which they rely. The duty to defend covers suits that arguably fall within the policy because a complaint might leave the ultimate *facts* unclear. *See Willoughby Hills*, 459 N.E.2d at 558. Suppose a complaint pleads allegations in the alternative—under some of which the policy would apply and others of which it would not. *See* Ohio Civ. R. 8(E)(2). The complaint, for example, might allege that a defendant acted negligently or intentionally, and the policy might cover only negligent acts. *See State Farm Mut. Auto. Ins. Co. v. Schalk*, 47 N.E.3d 926, 932–36 (Ohio Ct. App. 2016). The duty to defend would apply because courts will not identify the true facts until later. *See Willoughby Hills*, 459 N.E.2d at 558.

This principle has no application here. The School Districts' complaints do not leave the factual allegations unclear. *Cf. Twin Maples Veterinary Hosp. v. Cincinnati Ins. Co.*, 824 N.E.2d 1027, 1033 (Ohio Ct. App. 2005). They may recover under the IDEA only if Wallace and Bache engaged in abusive litigation by, for example, filing a "frivolous" complaint or suing for an "improper purpose." 20 U.S.C. § 1415(i)(3)(B)(i)(II)–(III). Because the School Districts indisputably must prove this misconduct, their complaints unambiguously request "sanctions." The allegations thus do not trigger a duty to defend because they fall "clearly and indisputably outside" Wesco's policy. *Ward*, 951 N.E.2d at 773–74; *Cincinnati Indem. Co. v. Martin*, 710 N.E.2d 677, 678 (Ohio 1999).

One final point. When debating whether Wesco's policy applies here, the parties have not distinguished the *costs* sought by the School Districts from the *attorney's fees* that they requested. Yet we see room to doubt their assumption that the fees and costs should rise and fall together. On the one hand, the Supreme Court has interpreted "costs" in the IDEA's fee-shifting provision to permit reimbursement for those expenses that are generally available under the generic "costs" statute, 28 U.S.C. § 1920. *See Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*,

548 U.S. 291, 297–98 (2006). And courts generally may award costs to a prevailing party under § 1920—*whether or not* the other side engaged in abusive litigation. *See In re Cardizem CD Antitrust Litig.*, 481 F.3d 355, 359–61 (6th Cir. 2007). So these costs may not be considered a "sanction" in the same way. On the other hand, courts typically may award costs under § 1920 only against an opposing *party*, not the party's *attorneys* (like Wallace and Bache). *See id.* The School Districts also sought "costs" for expenses incurred in administrative proceedings, but § 1920 identifies costs for expenses in litigation. So it is not clear whether § 1920 would allow the School Districts to recover their costs in proceedings outside of federal court. *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 439–41 (1987). At day's end, we merely flag these issues. Wallace and Bache have made no independent argument about the "costs" that the School Districts sought. They thus have forfeited any argument that we should treat the costs differently from attorney's fees. *See CHKRS, LLC v. City of Dublin*, 984 F.3d 483, 492 (6th Cir. 2021).

\* \* \*

Because the attorney's fees sought by the School Districts are sanctions excluded from Wesco's policy, the district court properly granted summary judgment to Wesco. We affirm.